(122 So. 884)

No. 28977.

STATE ex rel. CAREY v. DALGARN CONST. CO., Inc.

May 20, 1929.

Hubert M. Ansley, of New Orleans, for appellant.

Frank T. Doyle, of New Orleans, for appellee.

LAND, J. The relator, Thomas Carey, is a stockholder in respondent company, and prays for a writ of mandamus directed to said company to compel it to grant permission to relator to inspect its books and accounts.

Judgment was rendered in favor of relator, and from this judgment respondent company has appealed.

This company is composed of relator and of Louis M. Dalgarn and James R. Dalgarn, who are the owners of all of the stock.

Relator is the owner of one-third of the capital stock. He resigned his position in charge of the work on October 2, 1926, and in the following December or January ceased to be an officer in the company.

The present proceeding was instituted May 20, 1927, in which relator seeks compulsory permission to examine the minute books and books and accounts of respondent company, in order to obtain from said company and its officers necessary information as to their management and disposition of the funds, property, and business committed to their charge.

The various Constitutions of the state have uniformly secured to stockholders in corporations the right to inspect their books. Const. 1879, art. 245; Const. 1898, art. 273; Const. 1913, art. 273; Const. 1921, art. 13, § 4.

By "public inspection" as used in these articles is meant, not the inspection of the idle, the impertinent, or the curious, those without an interest to subserve or protect, or when the object is manifestly in opposition of the interest of the company, but the inspection by those with a laudable object to accomplish, or a real or actual interest, upon which is predicated the request for information disclosed by the books. Though the right to inspect is the rule, and it is very seldom proper for the officers of a company to refuse to allow the examination, the refusal is justifiable under the facts and circumstances above stated. Bourdette v. New Orleans Gaslight Co., 49 La. Ann. 1556, 22 So. 815; Bourdette v. Sieward, 107 La. 265, 31 So. 630; Legendre v. New Orleans Brewing Ass'n, 45 La. Ann. 671, 12 So. 837, 40 Am. St. Rep. 243; Scott v. President of Police Jury, 46 La. Ann. 280, 14 So. 521; Marsh v. Sanders, 110 La. 732, 34 So. 752.

In State v. Atchafalaya-Teche-Vermilion Co., 155 La. 885, 886, 99 So. 633, 635 (35 A. L. R. 748); the court said: "The purpose of the framers of the Constitution of 1913 in writing Article 273 into that instrument was to safeguard, primarily, the interests of stockholders in corporations, and also of investors invited to trade in the stock or shares of such corporations, by securing to them the information, by right of public inspection, which might be disclosed by the books of such corporations. State ex rel. Bourdette v. Gaslight Co., 49 La. Ann. 1559, 22 So. 815.

"The right of a stockholder to examine the books of a corporation in which he owns stock is based upon his actual pecuniary interest. His right to participate in the dividends, and to investigate the management of the corporate affairs, in order to determine the present value of his holdings and his future action in reference to the stock of the company, naturally flows from and is based upon such interest, and upon his status as a stockholder."

Respondent company first sets up as a defense that an audit has been made up to and including December 31, 1926. It then takes the position that a further audit from January 1, 1927, to date would serve no useful purpose, as it would not show any increase in net worth, but might show a decrease. It next makes the plea that the application of relator for an audit is prompted solely by a desire to harass respondent company and to pry into its affairs. A complete answer to all of these contentions is, first, that relator, as a stockholder, has not been furnished with a full audit of defendant company's affairs; second, that it does not lie within the power or discretion of defendant company to escape a full inspection of its books by relator, as a stockholder, upon the mere excuse that a further audit is unnecessary and would be pro-

ductive of no result; and, third, it is extremely frivolous for respondent company to charge that a stockholder, with a third interest in the company, is attempting to harass it by demanding a complete audit, in face of the fact that only a partial audit was obtained by relator as a stockholder.

Relator first employed Larrieu to audit the books of respondent company from October, 1926, up to such time in 1927 as to complete his audit of the books for 1927. In March, 1927, Larrieu furnished relator with a partial audit up to December 31, 1926, and, because he demanded $500 for the audit of the books for about six weeks or two months after December 31, 1926, Larrieu was discharged by relator, and Treadwell of the auditing firm of Peat, Warwick, Mitchell & Co. was employed to complete the audit.

Treadwell is an expert certified public accountant, and is manager of the New Orleans office of Peat, Warwick, Mitchell & Co., a national firm of accountants. After examining the audit and report of Larrieu up to December 31, 1926, Treadwell stated on the witness stand that it was not possible to tell the net worth of the Dalgarn Construction Company as of December 31, 1926, for the reason that the accounts receivable and accounts payable were furnished by the officers of the company, and were not checked or verified, and the fact that the books were kept on the receipts and disbursements plan did not prevent the confirmation of the accuracy of the accounts receivable and the accounts payable.

This witness also stated that the report did not include the items entered up in January, 1927, that belonged to the year, 1926, and the fact that they were not entered on the books in January, 1927, which were kept on the receipts and accrual plan, did not preclude the inclusion of them in the auditor's report for 1926.

The witness also points out the fact that no effort was made to ascertain the value of the fixtures set up in the statement of conditions at $8,250, and the fact that, although the report states that the accounts receivable from the board of commissioners of the port of New Orleans, with which the Dalgarn Construction Company had a contract involving $500,000 or $600,000, represent a retainer for work accomplished on November 30, 1926, nothing is said as to whether there was any work in December, 1926, or not.

As the testimony of Treadwell is based on the actual audit and report of Larrieu himself, it is clear that the report is incomplete, and does not furnish plaintiff, as a stockholder, with the necessary information as to the net worth of the Dalgarn Construction Company, or as to its actual financial condition, or as to the value of relator's stock.

Under the circumstances, the writ of mandamus properly issued in the court below, and was made peremptory.

Judgment affirmed.

O'NIELL, C. J., absent, takes no part.