**(132 So. 777)**

**ORLANDO v. RELIANCE HOMESTEAD ASS'N.**

No. 30633.

June 2, 1930.

On the Merits, Feb. 2, 1931.

Rehearing Denied March 2, 1931.

Carroll, McCall & Plough and Theodore Roehl, all of New Orleans, for appellant.

Theo. Cotonio, Jr., and Theo. Cotonio, both of New Orleans, for appellee.

Delvaille H. Theard, of New Orleans, representing New Orleans Homestead Clearing House Ass'n, amicus curiæ.

On Motion to Dismiss Appeal.

ROGERS, J.

The plaintiff, Vincent Orlando, obtained a judgment in the district court, ordering the defendant, Reliance Homestead Association, to permit plaintiff, or his authorized agent, to examine its books and records. The defendant corporation, suggesting error and injury, appealed suspensively and devolutively from the judgment. Plaintiff has moved to dismiss the suspensive appeal, on the ground that there cannot be two appeals from one judgment between the same parties, and that the appellant has waived its right to a suspensive appeal.

The record discloses that the appellant moved for and obtained from the judgment of the district court an order for "a suspensive and devolutive appeal" upon mover furnishing a bond for $100 for a suspensive appeal and a bond for $100 for a devolutive appeal. and that, in pursuance of the order of court, the appellant furnished two separate bonds of appeal for the designated amounts bearing

the same date—one for the suspensive appeal, and the other for the devolutive appeal.

■■ There is no merit in appellee's contention that, by perfecting the devolutive appeal, appellant waived the suspensive appeal. The order of court is the foundation of the appeal, and the order having authorized both a suspensive and devolutive appeal, it is of no consequence that the appellant executed, contemporaneously, two appeal bonds. In fact, this was the better practice so as to preserve the identity and duality of defendant's appeal. Standard Cotton Seed Oil Co. v. Matheson, 48 La. Ann. 1322, 20 So. 713.

■ The order of appeal obtained by the appellant was, in effect, an order granting alternative appeals. The order of appeal does not mean that appellant has two appeals, but that, if for any reason, the appeal should not stay execution, it shall nevertheless afford the appellant an opportunity to obtain the reversal or an amendment of the judgment. Code Prac. arts. 575–578; Lafayette v. Farr, 162 La. 385, 110 So. 624.

In support of his motion to dismiss, the appellee cites Legget v. Potter, 9 La. Ann. 309. The cited case is not applicable to the question presented in the instant case. There the appellant contented himself with taking a devolutive appeal only. The court stated that the procedure was irregular, unless by taking the devolutive appeal the appellant was to be regarded as having waived the ten days delay for the execution of the judgment. The court showed that the purpose of such delay was to give the party cast an opportunity to decide whether he would take a suspensive appeal, and, in case he should decide to do so, to allow him a reasonable time within which to procure his security and to perform other necessary acts. The court held that the delay was for the benefit of the judgment debtor, but, like any other privilege, it might be waived, and that it was virtually waived when the defendant obtained his devolutive appeal. In other words, that the appellant having elected, for reasons of his own, to take a devolutive appeal only, had waived a suspensive appeal, and could not complain that execution on the judgment prematurely issued. In the instant case, however, the appellant not only did not waive the suspensive appeal, but expressly applied for and obtained such an appeal, together with a devolutive appeal (in the alternative).

For the reasons assigned, the motion to dismiss the appeal is denied.

### On the Merits.

ODOM, J.

Relator, Vincent Orlando, is the owner of thirty shares of fully paid stock in the respondent, Homestead Association, and requested the officers of the corporation to permit him to inspect its books and records, and upon their refusal brought this suit, praying for a writ of mandamus directed to said corporation to compel it to grant such permission.

An alternative writ issued commanding the corporation to comply with relator's request or show cause to the contrary.

The corporation moved to strike out certain portions of relator's petition, which motion was overruled. It also excepted to petition on the ground that it set out no right or cause of action, which exception was referred to the merits.

For cause why the preliminary writ of mandamus should not be made peremptory, the corporation answered, in substance, that relator's request to examine its books and records was not made in good faith for the honest and specific purpose of obtaining information concerning its affairs and condition or the

value of relator's stock, but for the purpose of coercing it through vexatious and harassing methods into paying relator the withdrawal value of his stock in preference to other stockholders.

Upon trial of the case on its merits, there was judgment for relator, and the respondent corporation has appealed.

 The right of those who hold stock in domestic or foreign corporations doing business in this state to inspect the books and records of such corporations was secured by each of the Constitutions of this state adopted since 1879. Const. 1879, art. 245; Const. 1898, art. 273; Const. 1913, art. 273; Const. 1921, art. 13, § 4.

The right has been consistently upheld by this court. Legendre & Co. v. New Orleans Brewing Association, 45 La. Ann. 669, 12 So. 837, 40 Am. St. Rep. 243; State ex rel. Bourdette v. New Orleans Gaslight Co., 49 La. Ann. 1556, 22 So. 815, 816; State ex rel. Burke, Executrix, v. Citizens' Bank of Jennings, 51 La. Ann. 426, 25 So. 318; State ex rel. Carey v. Dalgarn Construction Co., 168 La. 620, 122 So. 884.

The same rule prevails under the common law.

"A stockholder has a right at common law to inspect and examine the books and records of the corporation at a proper time and place and for a proper purpose; and in many jurisdictions this right is further secured by statutory or constitutional provisions. Such statutes are salutary. They are not intended to abridge the stockholder's common-law rights, but to enlarge and extend them by removing some of the common-law limitations." 14 C. J. § 1300, p. 853.

"A stockholder in a corporation has in the very nature of things and upon principles of equity and good faith and fair dealing the right to know how the affairs of the company are conducted, and whether the capital of which he has contributed a share is being prudently and profitably employed. And in order to obtain this information he has, if not restricted by the charter or rules and by-laws of the corporation, a common law right, at proper and seasonable times, to inspect all the books and records of the corporation." 7 R. C. L. § 298, p. 332.

The right of a stockholder to inspect the books and records of the corporation in which he holds stock rests upon the fact of ownership. The books as well as the property of a corporation belong to the stockholders, and those in charge of the concern are their agents. With reference to the right of inspection, the relation of a stockholder to the corporation has been likened to that of a partner to the firm.

Shareholders in a corporation have a right to know how its affairs are being managed, and to the end that they may draw their own conclusions as to whether they are properly managed, and in order that they may know the value of their stock, and for proper guidance in their dealings with the corporation, they have a right to inspect the books.

In the case of State ex rel. Bourdette v. New Orleans Gaslight Co., supra, the court said, in substance, that the right of inspection was available only to those who had an actual interest in the corporation and who sought the information which an examination of the books might disclose, to subserve, advance, or to protect that interest, and not to the idle and impertinent. And the court went on:

"But a shareholder or other person with a laudable object to accomplish, or a real and actual interest upon which to predicate his request for information disclosed by the

books, is given, by the fundamental law itself, the right to inspect them."

Under our jurisprudence and that of all the other states, so far as we can find, the rule is to permit inspection and that the right to do so should be denied only in exceptional cases.

It is true that the right to inspect is a qualified and not an absolute one. No stockholder should be permitted to inspect the books through idle curiosity or for speculative or vexatious purposes, or for purposes not germane to his interest as a stockholder. But, if the request to inspect be made in good faith and for the honest and specific purpose of gaining information concerning the management of the corporation and the condition of its affairs generally, he cannot legally be denied the right.

The respondent in this case is a building and loan association organized under Act No. 120 of 1902, as amended by Acts No. 159 and No. 292 of 1910 and Act No. 280 of 1916. Up to July, 1929, it paid to the stockholders semi-annual dividends regularly, but failed to pay any in July of that year and made it known that none would be paid in January, 1930. For this reason relator became dissatisfied and apparently suspicious, and in September, 1929, gave written notice of his intention to withdraw his shares of stock and credits, as permitted by section 7, Act No. 280 of 1916. The association notified him that his claim to be paid had been filed and bore the number 1602½, which indicated that there were at least 1,602 other claims which would have to be paid before his was reached under the law and the rules of the association.

He then demanded the right to inspect the books, which demand was refused by the officers. Their refusal to permit the inspection was placed upon the ground that he had not stated the purpose for which he desired the information which an inspection of the books might disclose. His response, made by his counsel, was that he had reason to believe that the affairs of the association were being grossly mismanaged and that the officers and directors had been guilty of fraud and deceit and were intentionally concealing their illegal and fraudulent acts from the stockholders. He makes substantially the same allegations in his petition.

The right of a stockholder to inspect the books of the corporation to gain information as to the manner in which its affairs are being conducted is generally upheld.

In 14 C. J. p. 856, the rule is stated to be "that a stockholder as such has a right to inspect the books and records of the corporation where his sole object is to inform himself as to the manner in which the corporate business is being conducted." In support of this text many cases are cited.

"Also the right of inspection may be exercised, although the only object of the stockholder is to ascertain whether the affairs of the corporation have been rightly conducted by the directors and managers." 7 R. C. L., § 303, p. 327.

In the case of Guthrie et al. v. Harkness, 199 U. S. 148, 26 S. Ct. 4, 50 L. Ed. 130, 4 Ann. Cas. 433, the right of a stockholder in a national bank to inspect the books was upheld where his reasons for seeking such inspection were "that he might ascertain the value of his stock in the bank, and whether the business affairs of the same had been conducted according to law."

The corporation's defense is that relator was prompted by improper motives. Having alleged that he was, the burden was upon the corporation to sustain its allegations; there

being no presumption that his motives were improper. Stone v. Kellogg, 165 Ill. 192, 46 N. E. 222, 56 Am. St. Rep. 240; Johnson v. Langdon, 135 Cal. 624, 67 P. 1050, 87 Am. St. Rep. 156; State v. Pacific Brewing Co., 21 Wash. 451, 58 P. 584, 47 L. R. A. 208; Knox v. Coburn, 117 Me. 409, 104 A. 789. Respondent failed to discharge its burden.

For the reasons assigned, the judgment appealed from is affirmed; the respondent corporation to' pay all costs.

O'NIELL, C. J., and BRUNOT, J., dissent.