O’NIELL, Chief Justice.
 

 This is a mandamus proceeding brought by a stockholder in a homestead association to compel the association “to permit relator or any person by him designated to examine the books of the association and to make notes or extracts therefrom.” That is all that the relator asks for. He avers that he is a stockholder in the association; that he is the attorney at law for several other stockholders ; that he asked the association for permission, for himself and for his clients, to examine the books of the association and to make notes and extracts therefrom, and that the association denied him the privilege; that he has been informed that a stockholder and director named Sam Danna was permitted to withdraw his investment of about $4,000 in advance of stockholders whose applications for withdrawal were filed previous to Sam Danna’s, among which prior applications were those of relator’s clients; that the affairs of the association have been mismanaged to such an extent that the association has had to take over property amounting to about $200,000, because of excessive loans made thereon, in violation of the bylaws of the association; that a careful examination of the books and records of the association is necessary to ascertain the true condition of all loans; that relator is informed that the affairs of the association are being managed, not by the board of directors, but by the secretary, who has assumed exclusive control and seems to be the absolute master and arbiter of the affairs of the association ; that the purpose of the denial of relator’s right to examine the books of the association is to conceal the true condition
 
 *769
 
 of affairs, which, instead of showing improvement, is growing worse; that by the Constitution of Louisiana the right of a stockholder in a homestead association to examine the books of the association is made absolute; and that the only process for enforcing the right is by way of mandamus.
 

 The defendant homestead association pleaded that the court had not jurisdiction ratione materise, and that the petition of the relator did not set forth a cause or right of action. The relator then filed an affidavit to the effect that, besides being a stockholder in the association, he was the attorney at law and in fact of Basile Merenda, who owned 100 shares of stock in the association, of the value of $10,000; that relator’s power of attorney from Merenda was in the association’s possession; and that relator was also the attorney at law and the agent and attorney in fact of Biagio Pelicano, who owned 30 shares of stock in the association, of the value of $3,000.
 

 The judge of the civil district court overruled the plea to the jurisdiction of the court, but sustained the exception of no cause or right of action and dismissed the suit. The relator has appealed.
 

 We do not consider the appellant’s allegations to the effect that he is the attorney at law and attorney in fact of two or more stockholders, who are not parties to this proceeding, as being of any importance in determining whether he has a cause of action. An attorney at law has no more right than a layman would have to champion the cause of persons who are not before the court. We shall consider, therefore, only the rights of the appellant himself, as a stockholder of the homestead association, in determining whether he has disclosed a cause of aption.
 

 The appellant relies upon the decision in Orlando v. Reliance Homestead Association, 171 La. 1027, 132 So. 777; in which case it was held that a stockholder in a homestead association had the right to inspect the books of the corporation to gain information regarding the manner in which its affairs were being conducted. The decision was rendered in 1931, and in 1932 the Legislature adopted Act No. 140 of that year, entitled “An Act codifying the statutes of this State in respect to all homestead and building and loan associations,” etc. The statute contains eighty-one sections, covering forty-eight pages, and purports to embrace all of the law on the subject of homestead and building and loan associations. It is, in truth, as its title declares, a codification of the law on the subject of homestead associations ; and, by necessary implication, it withholds from stockholders in such associations the right to inspect their books, except that, under section 55, a withdrawing shareholder may, under such reasonable rules as the association may prescribe, inspect the books and records of the association for the purpose only of a suit against the association or its. officers or representatives, for a violation of the provisions of the statute or to enforce compliance with its provisions.
 

 The statute places all homestead associations under the supervision and control of the state bank commissioner, who, according to section 18 of article 6 of the Constitution 1921, is ex officio supervisor of homestead and building and loan associations. Section 64.
 
 *771
 
 All such associations must make annual reports to the commissioner. Their affairs must be examined by him at least twice annually. Section 65. If the officers or directors of such an association have violated the provisions of the statute or of the charter of the association, or if in the opinion of the commissioner it is inexpedient or would endanger the interests of the shareholders for the association to continue in business, the commissioner has the authority to compel a correction of the condition, and, if the complaints and demands of the commissioner are not fully complied with within 30 days, he may have the affairs of the corporation liquidated for the benefit of its shareholders. Section 67. The commissioner is made the representative of all of the shareholders.
 

 Section 78 of the statute declares:
 

 “The provisions of the present Statute in respect of the organization, management and operation, and for the supervision, liquidation, and administration of building and loan association shall be exclusive; and the other laws of this State, and particularly, the laws providing for the receivership of corporations, shall have no application to building and loan associations.”
 

 In other jurisdictions, where statutes have been enacted placing such quasi public institutions as building and loan associations, life insurance companies, savings banks, and the like, under the supervision and control of a designated public official, and prescribing the rights and remedies of the stockholders in such corporations, it has been held that the rights and remedies so prescribed are exclusive, and that the other laws relating to the rights and remedies of stockholders in corporations generally are not applicable to these quasi public institutions. State of Ohio ex rel. Bettman, Attorney General v. Court of Common Pleas of Franklin County, 124 Ohio St. 269, 178 N. E. 258, 78 A. L. R. 1079; Wright v. Federal Reserve Life Insurance Co., 131 Kan. 601, 293 P. 945; Union Savings & Investment Co. v. District Court of Salt Lake County, 44 Utah, 397, 140 P. 221, Ann. Cas. 1917A, 821; Picklesimer v. Morris, Judge (Abbott, Commissioner of Banking, v. Morris, Judge), 101 W. Va. 127, 132 S. E. 372; Ulmer v. Falmouth Loan & Building Association, 93 Me. 302, 45 A. 32, 33.
 

 In the case last cited the complainant, as a shareholder in the Falmouth Loan & Building Association, charged many acts of mismanagement and of violation of the by-laws of the corporation on the part of the officers, and asked for an injunction, for the appointment of a receiver, and for a winding up of the affairs of the association. In dismissing the shareholder’s complaint, the Supreme Judicial Court of Maine made use of these appropriate expressions, viz:
 

 “Loan and building associations, like savings banks, are creatures of the statutes. Their manner of organization and method of doing business are specifically prescribed by statute. They are placed under the charge, and to a certain extent under the control, of a public official, — the bank examiner. Upon him the statutes impose the power and the duty of an examination and investigation, and to him the associations must make stated reports. The bank examiner has the same powers and duties with respect to such as
 
 *773
 
 sociations that he has with respect to savings banks. Laws 1897, c. 319, § 4. He is required to visit each institution once in each' year, and as much oftener as he deems expedient. At such visits he has free access to the vaults, books, and papers, and is required to thoroughly inspect and examine all the affairs of the institution, and make such inquiries as are necessary to ascertain its condition and ability to fulfill all its engagements, and whether it has complied with the law. * * *
 

 “The statute points out the conditions under which the intervention of the court may be obtained, and the officer by whom the machinery of litigation may be set in motion. It suggests no other way. And it is the opinion of the court that it was the intention of the legislature, as expressed in the statute, that the power of invoking the interference of the court should be vested in the bank examiner alone, and that he only may pray for an injunction and a receiver. It is to be observed that these institutions possess a public character, and it is for the interest of the public, not only that they shall be subjected to judicial investigation when they ought to be, but also that they shall not be so subjected when they ought not to be. Unusual means are placed in the hands of the bank examiner to ascertain their condition, and it cannot be presumed that he wili fail to act in a proper case. If one shareholder may maintain a bill, so may every other. There is no limit. To subject loan and building associations to vexatious, harassing and expensive litigation caused by the suits of possibly multitudinous shareholders who may be dissatisfied, with or without reason, would greatly impair their usefulness, if not imperil their existence.”
 

 It is astonishing how like the Maine statute, Laws of 1897, c. 319, which was discussed in Ulmer v. Ealmouth Loan & Building Association, is Act No. 140 of 1932. It is true that in Ulmer’s Case, as in the other cases which we have referred to, in other jurisdictions, the complainant asked for some substantial relief, such as an injunction, a receivership, or a liquidation; whereas in the present case the plaintiff asks for nothing more than permission to inspect the books of the association and to make notes or extracts from them. But that privilege, like the right to invoke a receivership or liquidation of a homestead association, is vested in the bank commissioner, exclusively. If the privilege were vested also in every shareholder in a building association, the privilege of examining the books of the state banks would be vested also in every shareholder in each bank; which, as suggested in Ulmer’s Case, would greatly impair the usefulness, if not imperil the very existence, of such institutions.
 

 It is argued by the appellant in this case that to construe Act No. 140 of 1932 so as to deny to the shareholders in a homestead association the right to examine the books of the association would do' violence to the Constitution of Louisiana, article 13, § 4. And, in support of the argument, it is pointed out that, in Orlando v. Reliance Homestead Association, 171 La. 1031, 132 So. 777, 778, it was said that the right of the shareholders in foreign or domestic corporations doing business in Louisiana to inspect the books and records of the corporations was
 
 *775
 
 secured -by every Constitution of tbe state since 1879 — citing Const. 1879, art. 245; Const. 1898, art. 273; Const. 1913, art. 273; Const. 1921, art. 13,
 
 § 4.
 
 That expression was not necessary for the decision of the Orlando Case, and was not a part of it. The cases cited as sustaining the expression were Legendre & Co. v. New Orleans Brewing Association, 45 La. Ann. 669, 12 So. 837, 40 Am. St. Rep. 243; State ex rel. Bourdette v. New Orleans Gaslight Co., 49 La. Ann. 1556, 22 So. 815; State ex rel. Burke, Executrix, v. Citizens’ Bank of Jennings, 51 La. Ann. 426, 25 So. 318; and State ex rel. Carey v. Dalgarn Construction Co., 168 La. 620, 122 So. 884. Legendre v. New Orleans Brewing Association was a suit brought by several stockholders against the corporation for damages for the refusal of the secretary to allow the complainants to inspect such books of the corporation as article 245 of the Constitution of 1879 (the suit being brought in 1893) declared should be kept by all corporations “for public inspection.” The plaintiffs alleged that they had sustained a loss by a .slump in the value of their stock, which loss they could have averted if the secretary of the corporation had complied with their demand to inspect the books which the Constitution gave them the right to inspect. Their suit was dismissed on an exception of no cause of action, and the judgment was affirmed, on the ground that the corporation was not answerable for the failure of the secretary to obey the law. In the case of State ex rel. Bourdette v. New Orleans Gaslight Company, in 1897, the books which the plaintiff demanded the right to inspect were those which article 245 of the Constitution of 1879 declared were subject to public inspection,; that is to say, the book showing the amount of capital stock subscribed, the names of the owners of the stock, the amounts owned by them respectively, the amount of stock paid, and by whom, the transfers of stock and the dates thereof, and the amount of the assets and liabilities of the corporation. In that case it was properly held that the right of the shareholder of the corporation, or of any one, for that matter, to inspect such books, was guaranteed by the Constitution. They were of the same kind of books that the shareholder in the Citizens’ Bank of Jennings was allowed to inspect, in State ex rel. Burke v. Citizens’ Bank of Jennings. And those decisions were the basis for the ruling in State ex rel. Carey v. Dalgarn Const. Co.
 

 The appellant in this case, after filing his suit in the civil district court, filed a petition for a writ of subpoena duces tecum, to compel the defendant to bring into court, for the trial of the suit, the by-laws of the association, the minute book or books for the years 1929, 1930, 1931, and 1932, all applications for withdrawals received by the association from its shareholders since January 1, 1929, all canceled checks evidencing withdrawals since January 1, 1929, all canceled checks evidencing dividends paid since January 1,1929, and all check stub books showing dividends paid to stockholders since January 1, 1929. None of these books or records is included in the list of books and records which the Constitution 1921, art. 13, §
 
 4,
 
 declares are subject to public inspection, viz.:
 

 “Section 4. Every corporation, domestic or foreign, doing business in this State, shall have and maintain an office therein for the
 
 *777
 
 transaction of its business, where transfers of stock shall be made, and where books shall be kept for public inspection, showing the amount of capital stock subscribed, the names of owners of stock, the amount owned by them respectively, the amount of said stock paid, and by whom, the transfers of said stock, with the date of transfer, the amount of its assets and liabilities and the names and places of residence of its officers.”
 

 There is nothing in these provisions of the Constitution forbidding the Legislature to curtail the right of a stockholder in a corporation to inspect the corporation’s, books, other than those which are subject to public inspection; and they are only such books and records as the writers of the Constitution thought ought to be subject to public inspection, for the protection of all persons having or desiring to have dealings with any particular corporation.
 

 If the relator in this ease were suing for anything, else but the privilege of inspecting the books of the corporation and of making notes and extracts therefrom — if he were suing upon a real and substantial cause of action — he would have the right to a writ of subpoena duces tecum to compel the homestead association to produce such books and records as might be necessary to prove his claim; but, even in that case, he could not institute a fishing expedition into the books of the association generally, but would have to describe minutely the books or records asked for, and to declare under oath what he expects to prove by the books or records asked for.
 

 It is not necessary in this case to consider •at all the question whether a stockholder in a corporation not under the supervision or control of the bank commissioner has the right to inspect the books of the corporation, other than the books and records which the Constitution requires to be subject to public inspection. It is sufficient in this case to say that the right — and the duty — of examining the books of homestead associations is vested in the bank commissioner, and that a stockholder in such a corporation has not that prerogative. If the contention of the relator to the contrary were true, any and every individual would have the right, by obtaining a share of stock, to make his own private inspection and examination into the books of any and every state bank and homestead association in Louisiana. Eor reasons which are obvious, the Legislature has seen fit to say that that should not be so.
 

 Our conclusion is that the judgment appealed from is correct.
 

 The judgment is affirmed.
 

 OVERTON and ST. PAUL, JJ„ dissent. •