ODOM, Justice
 

 (dissenting).
 

 It is definitely settled in this state by an unbroken line of jurisprudence that those who own the capital stock of a corporation have the right to inspect its books at seasonable hours for the legitimate purpose of gaining information concerning- its management and the conduct of its affairs. This right exists independently of the constitutional provision that every corporation shall maintain an office for the transaction of business where transfers of stock shall be made and “where books shall be kept for public inspection.” Const. 1921, art. 13, § 4.
 

 
 *779
 
 This right of the stockholders to inspect the hooks rests upon the fact of ownership. The stockholders own the corporation and the books — the directors and officers do not. The directors and officers are the agents and representatives of the stockholders, and are vested with no right or privilege to withhold from those they represent any information concerning its affairs.
 

 The right of a man to see that his property is well managed, and to have access to the proper sources of information in this respect is not destroyed by the mere fact that he and others have followed certain regulations prescribed by law for the organization of corporations. If, instead of associating themselves together as stockholders in a corporation, men become associated as ordinary or commercial partners, they enjoy all the rights of partners, and it cannot be denied 'that every partner has the right to inspect the books of the partnership, and the mere fact of incorporation cannot destroy that right unless it is taken away by the provisions of the charter or by-laws or some special statute.
 

 It was said by this court in State ex rel. Martin v. Bienville Oil Works Co., 28 La. Ann. 204, that a stockholder has “in the very nature of things, and upon principles of equity, good faith, and fair dealing, the right to know how the affairs of the company are conducted —whether the capital of which he has contributed so large a share is being prudently and profitably employed, or otherwise.”
 

 This right then does not rest upon the right of public inspection granted by the present and prior Constitutions, but upon the general law. Cookburn v. Union Bank of Louisiana, 13 La. Ann. 289; State ex rel. Martin v. Oil Works Company, supra; State ex rel. Carey v. Dalgarn Const. Co., 168 La. 620, 122 So. 884; Orlando v. Reliance Homestead Association, 171 La. 1027, 132 So. 777.
 

 These four cases are cited for the special reason that it was held in each that a stockholder may inspect the books during reasonable hours and for legitimate purposes, and the holding was not based upon the right granted by the Constitution but upon the general law;. Other cases are cited in the Orlando Case.
 

 ' The right of inspection is recognized, not only in this jurisdiction, but generally throughout this country and in England.
 

 See case note, 22 A. L. R. 24; 7 R. C. L. 322 et seq.; 14 C. J. 856. See note, 45 L. R. A. 446; note, 42 L. R. A. (N. S.) 332.
 

 It is not suggested that either the charter or the by-laws of the defendant homestead association forbids the right of stockholders to inspect its books, nor is it contended that relator is attempting to inspect the books at unseasonable hours, or that the information which he seeks is for an unlawful purpose or that his inspection will interfere with its management. Nor do I understand that those of my associates who subscribe to the majority opinion in this ease dispute the general proposition that the right of stockholders to inspect the books of a corporation exists under the general law. But it is held that Act No. 140 of 1032, p. 454, prohibits this right. The court says:
 

 “But that privilege, like the right to invoke a receivership or liquidation of homestead association is vested in the bank commissioner exclusively.”
 

 
 *781
 
 In so holding, the court has, I think, fallen into grievous error and is setting a dangerous precedent, one which will redound to the injury and hurt of all building and loan associations.
 

 The error of law into which the court has fallen in holding that the right of inspection of the books is vested exclusively in the bank commissioner is that there is absolutely nothing in the act which can be reasonably interpreted to warrant such holding, and I say this with all respect.
 

 It is conceded that the act does not, in specific terms, prohibit that right. But it is thought that the right is prohibited by necessary implication, and this for two reasons: First, because section 78 of the act provides that its provisions “in respect of the organization, management and operation, and
 
 for
 
 the supervision, liquidation, and administration of building and loan association shall be exclusive.”
 

 The right of a stockholder to inspect the books of a corporation which is recognized under the general law has no reference and is not akin to the right conferred by this act upon the bank commissioner in respect to the organization, management and operation, supervision, liquidation, and administration of building and loan associations. The purpose of a stockholder in inspecting the books of the corporation, if legitimate, and no other is recognized or sanctioned by the courts, is not to enable him to manage, operate, supervise, administer, or liquidate the corporation, but to gain information concerning the operation and management of its affairs so that he may intelligently handle or dispose of his own stock. The principle underlying this right is wholly different from that which prompted the Legislature in' conferring upon the bank commissioner such rights as it did under the act.
 

 The bank commissioner not only has the right, but it is made his duty, to inspect the books of the association at least twice each year. But the act does not in terms make his right exclusive nor is the right of the stockholder to make the inspection excluded by necessary implication. In none of the cases from the'other jurisdictions cited in the majority opinion in support of its conclusion was the right of inspection by stockholders involved.
 

 In the second place, I think section 55 of the act, which in terms gives the right of inspection to withdrawing stockholders, in no sense indicates that other stockholders may not do so, but on the other hand suggests that they may. To hold otherwise would be tantamount to saying that it was intended that withdrawing stockholders should, for certain stated purposes, enjoy a high and most advantageous privilege not enjoyed by others.
 

 Under section 55 of the act, a withdrawing stockholder may sue the officers and the association for a violation of the statute and to enforce its provisions, and, to gain information for the purposes of his suit, is entitled to inspect the books and records of the association. While the act greatly restricts the rights and privileges of withdrawing stockholders in other respects, it does in terms grant to them the right to bring suit to enforce its provisions, and to that end the right of inspection is also granted.
 

 
 *783
 
 Now, because the act specifically confers this right and privilege upon this class of stockholders, it cannot be argued with any show of reason "that it was intended that other stockholders should not enjoy the same high privilege. Most assuredly, if. a withdrawing stockholder may sue the officers and the association for a violation of the statute or to enforce its provisions and for such purpose inspect “the books and records of the association,” any other stockholder may do the same thing. No reason has been suggested to me, and I can think of none, why a stockholder who does not wish to withdraw his stock from the association should not and does not have the same right to sue to have the provisions of the act carried out as one who wishes to withdraw. The fact that withdrawing stockholders are granted this right under certain conditions and that the act makes no mention in this connection of the rights of other stockholders in this respect cannot be construed to mean that it was intended that others should have no such right.
 

 I think the reason for the special provisions in the act that this privilege should be enjoyed by withdrawing stockholders is to make clear that, while the act withdraws from that class certain rights which others enjoy, yet it was not intended that this special privilege should be denied them. The fact that the act in terms withdraws from this class of stockholders many of the privileges enjoyed by the others might reasonably be interpreted to mean that they could not sue for the purposes mentioned and could not inspect the books, and it was therefore thought necessary to specially reserve to them this right. This fact is pregnant with the idea that non-withdrawing stockholders enjoy the right to sue to enforce the provisions of the act and to inspect the books. It was certainly never intended that this class of stockholders should have greater rights in this respect than others.
 

 "While it is not so stated in the majority opinion, the underlying thought seems to be that, if a stockholder wants information concerning the affairs of the corporation, he should apply to the bank commissioner.
 

 The same might be said with reference to withdrawing stockholders, and yet that class is specifically granted the right to personally inspect the books. It does not seem reasonable that it was intended that one class of stockholders should have the privilege of gaining information by personally inspecting the books and that another class should gain information only through the bank commissioner.
 

 I think the court has misconstrued the purpose of the act in this respect, and I think further that this error will operate greatly to the disadvantage of building and loan associations. It is conceivable that the officers of these associations might be annoyed and embarrassed to some extent by the requests of stockholders to examine and inspect the books. But the courts have always protected them against undue and unreasonable annoyances in this respect. Officers and directors of these associations should bear in •mind always that the stockholders own the books and the corporation itself and indirectly own its property, and that they are only agents of the owners. They have no legal right to close the doors against those who stake their means on the enterprise and
 
 *785
 
 thereby make its existence possible, or to withhold from those willing to invest information concerning that which belongs to them. Such a policy on the part of the officers creates suspicion, destroys confidence, and weakens the organization. At the present time, more than ever before, people are demanding information concerning the handling of their funds by corporations. It is therefore not probable that the lawmaker intended to withdraw from stockholders the right to personally gain this information.
 

 The relator here alleges that Act No. 140 of 1932 has been, and is being, violated by the officers and directors to his prejudice. He can take no steps of any kind to correct these §vils of which he complains without definite information, and this he can get only by inspecting the books which furnish the only source of such information. His right of inspection has been denied him. He has been denied a legal right, and it is the duty of the courts to protect him.
 

 I dissent.