Thomas W. DURNIN, Guardian of the
Estate of Harold E. Schmick,
Jr., a Minor

v.

The ALLENTOWN FEDERAL SAVINGS
AND LOAN ASSOCIATION.

Civ. A. No. 32643.

United States District Court
E. D. Pennsylvania.

June 28, 1963.

Leon H. Kline, Philadelphia, Pa., Martin H. Philip, Slatington, Pa., for plaintiff.

Tom P. Monteverde, of Schnader, Harrison, Segal & Lewis, Howard Wallner, Philadelphia, Pa., for defendant.

FREEDMAN, District Judge.

This is a motion to dismiss under Rule 12(b) on the ground that the complaint fails to state a claim upon which relief can be granted. An affidavit in support of the motion was filed after the argument and we shall therefore treat the motion as one for summary judgment under Rule 56(b).

The action was instituted in the Court of Common Pleas of Lehigh County and was then removed by the defendant to this court.

The defendant is a federal savings and loan association, incorporated under § 5 of The Home Owners Loan Act of 1933, as amended (12 U.S.C.A. § 1464), and maintains a place of business in Allentown, Pennsylvania. It received its charter from the Federal Home Loan Bank Board, an agency of the United States of America.

Plaintiff is the guardian of the estate of a minor by appointment of the Orphans' Court of Carbon County. Some time in February 1962 he became a member of the association by opening a savings account and making a deposit therein of $3,000.

On August 28, 1962, plaintiff made a written request, *inter alia,* for a list of names and addresses of all members of the association.[1] He received no reply to this letter. On September 12, 1962, plaintiff again requested a list of the members of the association. On the same day defendant refused the request, stating that the information was confidential and defendant was not permitted to reveal it. Plaintiff therefore seeks to have defendant required to deliver to him its books and records containing the list of members and their addresses, or, in the alternative to permit him to copy the list of the members, their addresses and the number of their shares, at such times as may be reasonable and will not interfere with the defendant's normal business activities. Defendant's affidavit avers that it refused to furnish the information sought because its by-laws prescribed by the Federal Home Loan Bank Board do not provide for such disclosure to members and further because it was advised by the Board that the information was confidential and should not be released. In support of the affidavit there is attached a letter from a supervisory agent of the Federal Home Loan Bank Board confirming it to be the Board's view that information pertaining to those who hold savings accounts in an association should not be publicly disclosed because it involves a confidential relationship between the association and its members.

There is no allegation of mismanagement of the association.[2] What is presented, therefore, is the naked question of the right of a member of a federal savings and loan association who holds

1. The complaint, ¶5, avers that the notice of August 28 asked that the defendant supply the list to the plaintiff, or, if that was refused, that it permit the plaintiff to copy the membership list. The alternative allegation is not supported by the copy of the written request attached as Exhibit A.

2. The complaint, ¶7, alleges that plaintiff seeks to inspect the membership list in order to procure the election of officers,

directors and managers "who will be faithful to the best interest of the members and who will control its property in accordance with the purposes for which the corporation was organized", and to "make proper inquiry into the management of the corporation in order to discover whether or not dissatisfaction of the members is justified, and, if so, to eliminate the cause of such dissatisfaction".

a savings account to obtain a list of the membership in order to solicit their votes for the election of directors.[3]

██ It is a familiar principle, deeply imbedded in general corporation law, that a shareholder of a corporation, as one of the owners, has the right to examine the books and records of the corporation at a proper time and for a proper purpose. In many States this principle has received statutory recognition, but such statutes are generally held to be declaratory of the common law right of inspection.[4] The right to examine the stockholders list is a basic privilege of every stockholder of a corporation and should be given the widest recognition as fundamental to corporate democracy. It is much narrower in scope and more freely granted than the right to pore over the records of the financial and business transactions of the corporation whose management the stockholders entrust to the officers and directors.[5]

Defendant does not question the general rule. Its motion to dismiss relies upon the nature of a federal savings and loan association. It claims that such associations are federal instrumentalities governed exclusively by federal statutes, rules and regulations, and since they make no provision for a member's inspection of the membership list, the right does not exist. In support of this contention defendant asserts that any such right is unnecessary because of extensive governmental supervision, and in any event is concluded by the advice or determination of the Federal Home Loan Bank Board to that effect.

██ A federal savings and loan association is without doubt an instrumentality of the United States.[6] Assuming that State law, under which the right of inspection is clear,[7] does not apply,[8] does the federal law governing these associations reveal that what has been described as a "common law" right of inspection [9], has been intentionally denied to their members?

The Federal Home Loan Bank Board "is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations,' and to issue charters therefor * * *". 12 U.S.C.A. § 1464(a). The statute requires that federal savings and loan associations "shall raise their capital only in the form of payments on such shares as are au-

3. The members elect the directors, who in turn elect the officers. See 12 C.F.R. § 544.5, pp. 450–51.

4. Guthrie v. Harkness, 199 U.S. 148, 153, 26 S.Ct. 4, 50 L.Ed. 130 (1905); Bishop's Estate v. Antilles Enterprises, 252 F.2d 498 (3d Cir., 1958), Maris, J.; Goldman v. Trans-United Industries, Inc., 404 Pa. 288, 171 A.2d 788 (1961). See also 5 Fletcher, Cyclopedia Corporations (1952) § 2213 et seq.; 2 Hornstein, Corporation Law and Practice (1959) § 611 et seq.; Annot. Purposes for which stockholder or officer may exercise right to examine corporate books and records, 15 A.L.R.2d 11 (1951); Model Bus.Corp.Act Annot., § 29 (voting list), § 45 (books and records).

5. The distinction has recently been emphasized in Goldman v. Trans-United Industries, Inc., 404 Pa. 288, 292, 171 A.2d 788 (1961).

6. United States v. Harper, 241 F.2d 103 (7th Cir., 1957); People of State of California v. Coast Federal Savings & Loan Association, 98 F.Supp. 311, 316 (S.D. Cal.1951).

7. See Henzel v. Patterson Building & Loan Association No. 2, 128 Pa.Super. 531, 532, 194 A. 683 (1937); Muro v. Elwood Becker Building & Loan Association, 20 Pa.Dist. & Co.R. 510 (1934).

8. See First Federal Savings & Loan Association of Wisconsin v. Loomis, 97 F.2d 831 (7th Cir., 1938), affirming First Federal Savings & Loan Association of Wisconsin v. Finnegan, 19 F.Supp. 678 (W. D.Wis.1937), cert. dismissed sub nom. Martin v. First Federal Savings & Loan Association, 305 U.S. 666, 59 S.Ct. 363, 83 L.Ed. 432 (1939). See also People of State of California ex rel. Dept. of Public Works v. Metrim Corp., 187 Cal. App.2d 289, 9 Cal.Rptr. 584 (1961); People of State of California v. Coast Federal Savings & Loan Association, 98 F. Supp. 311, 316 (S.D.Cal.1951).

9. See cases and texts cited, supra, note 4.

thorized in their charter * * * ". 12 U.S.C.A. § 1464(b). The regulations of the Board issued under the authority of the statute provide for savings accounts which constitute the capital of the corporation. In the charter and by-laws prescribed by the Board (12 C.F.R. § 544) all holders of savings accounts and all borrowers from the association are declared members and each holder of a savings account is to be permitted to cast one vote for each $100. or fraction thereof of the withdrawal value of his account. A borrowing member is to be permitted to cast one vote as such. No member may cast more than 50 votes. Voting may be by proxy. A majority of all votes cast at any meeting of members shall determine any question. Voting right is determined as of a specified closing date. (12 C.F.R. § 544.1). Under the by-laws prescribed by the regulations (12 C.F.R. § 544.5) annual meetings of the members are required and special meetings may be called at any time by the president or the board of directors and must be called on the written request of members holding at least one-tenth of the capital of the association. At the annual meeting of the members, directors are elected for three-year terms; approximately one third of the board is elected each year. (12 C.F.R. § 544.1). The officers are elected by the directors at their meeting next following the annual meeting of members. (12 C.F.R. § 544.5).

The charter and by-laws contain no provision for inspection or copying of the membership list by a member. Is the absence of such provision to be construed as a denial of the right of inspection? As support for its contention defendant points to a regulation that the association "shall cause a true copy of its charter and bylaws * * * to be at all times available to the members of such association * * * and shall deliver a copy of such charter and bylaws to any member upon request." (12 C.F.R. § 544.7). From this it is argued that application of the doctrine *expressio unius est exclusio alterius* requires the conclusion that the membership list is not available to the members, since the regulation speaks only of the charter and by-laws. In this, defendant suggests, there is no hardship because the regulations require the incumbent management of an association to give notice of the annual meeting either by individual notice to all the members or by advertisement. (12 C. F.R. § 544.5). Defendant asserts that plaintiff has available for his use the same means of public advertisement in a newspaper of general circulation. The doctrine *expressio unius est exclusio alterius* is at best an unreliable basis for ascertaining intention. Its premise is that the draftsman has made a comprehensive review of all possible related provisions, from which the inference is to be drawn that his silence indicates a discriminating judgment of rejection. Such a conclusion usually is unrealistic, for it assumes too much foresight in the draftsman. Moreover, it frequently collides with inferences that run the other way. For example, a requirement that the management keep copies of the charter and by-laws and deliver them on demand to all members, far from indicating a restriction on the right of members to information, indicates an enlargement of the customary right of inspection. It may, therefore, be said that the draftsman of the regulations added to the common law right of inspection of membership lists a special right to receive a copy of the charter and by-laws. In any event, we think more would be required than silence of the regulations to overcome the general "common law" right of a member of a corporation to inspect and copy the membership list. The right of inspection of membership lists even in business corporations was not always provided by statute. Yet many courts were led to extend this obvious right on grounds of public policy.[10] In Pennsylvania, where an elaborate modern building and loan code [11] failed to provide for the right of inspection of membership

10. See cases and texts cited supra, note 4.

11. Act of May 5, 1933, P.L. 457, 15 P.S. § 1074–1 et seq.

lists it was argued that this statutory silence, when contrasted with the statutory recognition of the right in business corporations, manifested a legislative intention that building and loan association members did not have the right to inspect the membership list. The argument was rejected. "The mere fact that the Building and Loan Code of 1933 * * * does not specifically provide that stockholders of building and loan associations shall have the right to inspect the list of stockholders, or be furnished with a list of them, will not be applied so as to deprive them of a common-law right enjoyed by stockholders of corporations generally. The Code will not be construed as limiting the rights of stockholders to those specifically enumerated, except where the intention to do so is clear." [12]

■ Public policy requires that the right of inspection by the owners of a corporation be permitted in the absence of express statutory or equivalent denial. So it was held in Pennsylvania that a stockholder was entitled to examine the books of the corporation with his attorney even though the by-laws for which the stockholder had voted provided that stockholders could only examine the books if the board of directors in their discretion authorized it. Commonwealth ex rel. Wilde v. Pennsylvania Silk Co. (No. 1), 267 Pa. 331, 110 A. 157 (1920). The same principle was applied to a building and loan association in Muro v. Elwood Becker Building & Loan Association, 20 Pa.Dist. & Co.R. 510 (1934).

■■ The fact that federal savings and loan associations are regulated and supervised by the Federal Home Loan Bank Board is not alone sufficient to oust the right of a member to obtain the membership list.[13] Only by maintaining the right of inspection may the regulations of the Board itself be made effective. For only so can the right of a member to vote for directors, who in turn will elect the officers, be fully exercised. Without knowledge of the identity of his fellow members it would be idle to confer upon him the right to force a special meeting of members on the signature of members holding one-tenth of the capital of the association. For how could he go about securing the joinder of his fellow members in such a call if he had no right to learn their names from the association? Moreover, the regulation of the affairs of a federal savings and loan association by the Home Loan Bank Board does not exhaust or exclude the area in which members may have good reason to communicate with their fellow members on affairs relating to the association. They are still the ultimate owners

12. Henzel v. Patterson Building & Loan Association No. 2, 128 Pa.Super. 531, 532, 194 A. 683, 684 (1937).

13. In Guthrie v. Harkness, 199 U.S. 148, 26 S.Ct. 4, 50 L.Ed. 130 (1905), the Supreme Court recognized the common law right of inspection by a shareholder of a national bank: "It is true that for some purposes a national bank is a public institution, notwithstanding it is the subject of private ownership. It may issue bills, which circulate as part of the currency of the country. It is subject to examination and in a large measure to the supervision of the Comptroller of the Currency. It is examined at stated periods, and may be the subject of special examination by order of the Comptroller. But it is owned by shareholders, like other banking institutions. It is subject by statute to be sued in the courts of the State. 25 Stat. 433. There is nothing in the banking act, as we read it, which limits a shareholder or shareholders, seeking knowledge for a lawful purpose of an institution in which they have a proprietary interest to an application to the Comptroller for an examination by a public officer of the affairs of their company." (199 U.S. p. 157, 26 S.Ct. p. 7, 50 L.Ed. 130) See also Wittnebel v. Loughman, 80 F.2d 222 (2d Cir., 1935), Augustus Hand, J., cert. den. 297 U.S. 716, 56 S.Ct. 590, 80 L.Ed. 1001 (1936), where the common law right was given recognition despite the fact that the national bank was insolvent and in the hands of a conservator appointed by the Comptroller of the Currency to liquidate the bank's assets.

of the association and the provisions for strict control and supervision by the Federal Home Loan Bank Board are for their additional protection. We find ourselves unable to construe these protective provisions as intended to destroy the fundamental right of inspection on which rests the means for communication among the members.

■ The letter from the supervisory agent of the Board does not rise to the dignity of a regulation. (See 12 C.F.R. § 508.10 et seq., dealing with the promulgation of regulations). Hence we need not consider the question which would arise if the Board by a formally adopted regulation expressly denied the right of inspection.

■ Nor are we led to believe that the right of inspection should be denied because making the membership list available would reveal the amount of the members' savings accounts. This is an everyday occurrence whenever there is inspection of a stockholders' list which shows the number of shares owned by each stockholder, especially in a corporation whose stock has a readily ascertainable market price. If a right of privacy of individual investors in private corporations does not bar the right of inspection the less so may it operate in the

case of a corporation supervised by governmental authority. So it has been held as to banks.[14] So it has also been held as to state savings and loan, or building and loan associations.[15] No greater secrecy as to the identity and holdings of its members is required in the case of a federal savings and loan association than exists in the related cases of state savings and loan or building and loan associations or in the case of banks.[16]

Defendant relies heavily on Daurelle v. Traders Federal Savings & Loan Association of Parkersburg, 143 W.Va. 674, 104 S.E.2d 320 (1958), where a member of a federal savings and loan association was denied the right to examine the list of members and their addresses. The decision is not binding on us and we do not find it persuasive. It is, moreover, distinguishable, because the association had already lawfully redeemed plaintiff's stock so that any right of inspection fell; and the court was influenced by a recent statute which indicated an intention to alter the previously existing common law and statutory right of inspection in West Virginia.

ORDER

And now, June 28, 1963, defendant's motion to dismiss is denied.

14. See supra, note 13.

15. Orlando v. Reliance Homestead Association, 171 La. 1027, 132 So. 777 (1931); Henzel v. Patterson Building and Loan Association No. 2, 128 Pa.Super. 531, 194 A. 683 (1937); White v. Smith, 256 N.C. 218, 123 S.E.2d 628 (1962); Muro v. Elwood Becker Building & Loan Association, 20 Pa.Dist. & Co.R. 510 (1934). For cases contra see State ex rel. Cotonio v. Italo-American Homestead Association, 177 La. 766, 149 So. 449 (1933), cert. den., 290 U.S. 694, 54 S.Ct. 128, 78 L.Ed. 597; State ex rel. Schomberg v. Home Mutual Building & Loan Association, 220 Wis. 649, 265 N.W. 701 (1936); State ex rel. Wicks v. Puget Sound Savings & Loan Association, 8 Wash.2d 599, 113 P.2d 70, 134 A.L.R. 696 (1941); De-Fazio v. Haven Savings & Loan Association, 22 N.J. 511, 126 A.2d 639 (1956). These cases, involving state associations, represent decisions by state courts as to

218 F.Supp.—46

state public policy and the proper interpretation of the state statute involved. See Annotation, Right of member of savings and loan association to inspect books and records, 134 A.L.R. 699 (1941).

16. Indeed, there is an element which requires less disclosure in the case of federal savings and loan associations than of other institutions because of a limitation on voting. In savings and loan associations a member is entitled to one vote for each $100., or fraction thereof, of the withdrawal value of his savings account, but no member may cast more than 50 votes. The extent of a member's savings account in excess of $5,000. is therefore in general of no significance for voting purposes. The full amount of a member's savings account may be significant, however, on a demand for the call of a special meeting of members. See 12 C.F.R. § 544.5.