[No. 23521. *En Banc.* November 27, 1931.]

*In the Matter of the Receivership of* HOME SAVINGS AND LOAN ASSOCIATION; HOME SAVINGS AND LOAN ASSOCIATION, *Appellant,* H. C. JOHNSON, *Receiver, Respondent.*

WILLIAM F. ECKART *et al., Appellants,* v. HOME SAVINGS AND LOAN ASSOCIATION *et al., Respondents.*[1]

*Riddell, Brackett & Fowler,* for appellant Home Savings and Loan Association.

*The Attorney General* and *Lester T. Parker, Assistant,* for respondents H. C. Johnson, as director of efficiency, *et al.*

*Robert P. Oldham, Amicus Curiae.*

[1]Reported in 5 P. (2d) 511.

352

PARKER, J.—These two actions were separately commenced in the superior court for King county, each looking to the appointment of a receiver of the Home Savings and Loan Association of Seattle, for liquidation of its affairs, upon the ground of it being in an unsound condition.

The plaintiffs, Eckart and Greenbaum, stockholders of the association, first commenced their action, in behalf of themselves and others similarly situated, against the association and Harry C. Johnson, as the state director of efficiency, who had taken charge of the association and its affairs because of its being in an unsound condition. The association answered in that action, resisting the appointment of a receiver, alleging facts upon which it claimed the right to voluntarily liquidate its affairs under the direction of its directors, in pursuance of the provisions of the statute which we shall presently notice. Johnson, as the director of efficiency, by the *Attorney General,* also answered in that action, resisting the appointment of a receiver therein, and prayed for dismissal thereof, upon the ground that, under our savings and loan association statutes, a receiver of such an association can be appointed only at the instance of the *Attorney General* in an action commenced by him in the superior court.

Soon thereafter, the *Attorney General,* upon the request of Johnson, as the director of efficiency, commenced his action in the superior court praying for the appointment of Johnson, the director of efficiency, as receiver of the association for the liquidation of its affairs, upon the ground of its being in an unsound condition, entitling his action, "In the Matter of the Receivership of Home Savings and Loan Association." The association answered, resisting the *Attorney General's* prayer for appointment of a receiver, as it had

answered in the action commenced by Eckart and Greenbaum.

Thereupon, both of these actions were, by consent of all parties, consolidated for trial and final disposition. They accordingly proceeded to trial in the superior court; which trial resulted in a judgment dismissing the action commenced by Eckart and Greenbaum, from which judgment they appealed to this court; and also resulted in an order appointing Johnson, the director of efficiency, permanent receiver of the association in the action commenced by the *Attorney General,* from which order the association appealed to this court.

It will, we think, be helpful to have before us, at the outset of our inquiry, certain provisions of our savings and loan association statutes applicable to the facts of this controversy. We refer to sections of Remington's Compiled Statutes. Section 3734 reads, in part, as follows:

"The state auditor shall have supervision of all such associations doing business in this state, and shall be charged with the execution of the laws of this state relating thereto."

Section 3735 reads as follows:

"Whenever it shall appear to the state auditor that the affairs of any savings and loan association are in an unsound condition or that it is conducting its business in an unsafe or unlawful manner, the state auditor may direct the inspector of savings and loan associations to take possession of all books, records and assets of every description of such association and hold and retain the possession of same pending the further proceedings herein specified. Should the board of directors, secretary or person in charge of such association refuse to permit the said inspector to take possession as aforesaid, the state auditor shall communicate such fact to the attorney general, whereupon it shall become the duty of the attorney general at once to institute such proceedings as may be necessary to place

such inspector in immediate possession of the property of such association. Upon taking possession of the effects of the association as aforesaid said inspector shall prepare a full and true statement of the affairs and condition of such association, including an itemized statement of its assets and liabilities, and shall receive and collect all debts, dues and claims belonging to it and pay the immediate and reasonable expenses of his trust. Such inspector shall be required to execute to the state auditor a good and sufficient bond in a sum required by the state auditor conditioned upon the faithful discharge of his duties as custodian of such association, which said bond shall be approved by the state auditor, and the expenses of which shall be borne by the association under examination.

"When the condition of such association has been fully ascertained, and it shall appear that the affairs of said association are in fact in an unsound condition, the state auditor shall at once notify in writing the board of directors of such association of his decision, giving them twenty days in which to restore the affairs of such association to a sound condition. Meanwhile, the auditor shall remain in charge of the books, records and assets of every description of such association, attend or be represented at all directors' and stockholders' meetings held, suggest such steps as he may deem necessary to restore such association to a sound condition; and if same is not done within the twenty days allowed by the statute he shall report the facts to the attorney general and it shall thereupon become the duty of the attorney general to institute proceedings in the superior court of the proper county for the appointment of the state auditor as receiver and for the dissolution of such association, or such other proceedings as the occasion may require."

Section 3742 reads as follows:

"Any savings and loan association incorporated under the laws of the State of Washington may dissolve itself voluntarily in the following manner:

"A majority of the board of directors shall publish a notice in some newspaper of general circulation in the county wherein is the principal place of business

of the association once each week for eight consecutive weeks calling a meeting of the shareholders to determine whether said savings and loan association shall voluntarily dissolve. If at such meeting two-thirds of the shareholders then present and voting shall vote to dissolve, and the state auditor shall approve of such dissolution, the officers of the association, under the direction of the directors of the association, shall thereupon proceed to liquidate the affairs of the association and reduce the assets thereof to cash, and, after paying all indebtedness and expenses, distribute the same among the shareholders in proportion to the withdrawal value of the holdings of each shareholder at the time of the passage of the resolution to dissolve.''

Section 3735½, as amended by Chapter 144, Laws of 1925, Ex. Ses., p. 406, § 8, which amendment has the effect of transferring the supervision of savings and loan associations from the state auditor to the director of efficiency, reads, in part, as follows:

''The director of efficiency shall have the power and it shall be his duty through and by means of the division of savings and loan which is hereby created: To exercise all the powers and perform all the duties in relation to the organization, inspection, supervision and dissolution of savings and loan associations formerly vested in and required to be performed by the state auditor or the director of taxation and examination. The director of efficiency shall appoint an assistant to be known as the supervisor of savings and loan associations who shall hold office during his pleasure, and shall have power to appoint and employ such inspectors, auditors, accountants and such other clerical assistants as may be necessary for the general administration of the division of savings and loan.'' Rem. 1927 Sup., § 3735½.

As we view this controversy, the controlling facts, well established by the record before us, may be summarized as follows:

The Home Savings and Loan Association is, and has been for several years past, a duly organized and

incorporated savings and loan association under the laws of this state, of which the above quoted statutory provisions are a part. On July 7, 1931, following an examination of the affairs of the association by John W. Allen, the supervisor of the savings and loan division of the department of efficiency, of which Harry C. Johnson was the head as the director of efficiency, it was determined by them that the association was in an unsound condition. On that day Johnson, as director, caused Allen, as supervisor, to take possession of the association and its affairs, looking to its liquidation, subject to the association being restored to a sound condition; due opportunity in that behalf being given to the directors of the association by notice, as provided by § 3735, above quoted. The directors have not taken any steps looking to the restoring of the association to a sound condition.

From July 9 to August 27, 1931, inclusive, the directors of the association caused to be published, as provided by § 3742, above quoted, their notice to the stockholders of the association, calling a meeting of its stockholders to be held at its office in Seattle on September 7, 1931, to vote upon and decide as to whether or not the association should voluntarily dissolve itself and liquidate its affairs under the direction of its directors; the directors having adopted a preliminary resolution looking to that end. Johnson, as director of efficiency, and his assistant Allen, as supervisor of savings and loan associations, continued in possession of the association and its affairs pending the holding of that meeting and the action of the stockholders and the directors touching the question of voluntary liquidation of the affairs of the association.

The contemplated meeting of the stockholders was held on September 7, 1931, some eight hundred of the some sixteen thousand stockholders attending and

participating therein. It was there voted that the association be voluntarily dissolved and liquidated. All of the then directors of the association resigned during that meeting, and the stockholders there assembled elected a new board of directors. Johnson tentatively acquiesced in and, in some measure, encouraged the directors and the stockholders attending that meeting in their efforts to bring about some safe plan of voluntary liquidation of the affairs of the association; but seriously disapproved of the election of two of the newly elected directors, giving notice that he would in no event approve of voluntary liquidation if those two became directors.

Examination of the affairs of the association, under the direction of Allen as supervisor, continuing up to September 17, 1931, had disclosed further facts showing a more seriously unsound condition of the affairs of the association than had previously appeared. It then appeared that the approximate $4,500,000 capital of the association had been impaired to the extent of over $400,000 by misappropriations of funds and securities of the association aggregating in value more than that sum. The contingent fund of the association, as shown by the books of the association as having been accumulated as provided by Rem. Comp. Stat., §3728, as amended by Chapter 144, Laws of 1925, Ex. Ses., p. 405, amounted to $85,737; so that the misappropriations impairing the capital of the association appeared in the aggregate to be over $300,000 in excess of the association's contingent fund. It is not here contended that the affairs of the association are otherwise than in an unsound condition, clearly calling for liquidation of its affairs.

After the meeting of the stockholders and the further investigation of the affairs of the association, disclosing greater impairment of its capital, as we have above

358

noticed, Johnson, as director of efficiency, finally decided to withhold his approval of voluntary liquidation of the affairs of the association under the direction of its directors. Soon thereafter, these two actions were commenced and proceeded to trial, resulting in their final disposition and the appeals to this court, as already noticed by us.

Our problem is simply this: Did the trial court err in its appointment of Johnson, the director of efficiency, as receiver of the association, vesting in him as such the authority to liquidate and wind up its affairs, thus refusing to compel Johnson to surrender the association and its affairs into the hands of its directors to the end that they might proceed with voluntary liquidation of its affairs? It is plain, as we have seen, that the association is hopelessly in an unsound condition; that the association's directors have not taken any steps looking to its restoration to a sound condition; that the association's unsound condition plainly calls for the liquidation and winding up of its affairs; and that Johnson, as director of efficiency, has not approved of voluntary liquidation.

While we may concede, for present purposes, that the director of efficiency may, in his discretion, approve of a voluntary liquidation of a savings and loan association under the direction of its directors, though it be in an unsound condition; we are, however, of the opinion that it clearly appears in this controversy that Johnson, as director of efficiency, did not exceed his power, or fail to rightly exercise it, in withholding his approval of the proposed voluntary liquidation of the association's affairs under the direction of its directors. The facts above summarized and our statutory provisions above quoted, we think, are conclusive to this effect.

In our present inquiry, we have found but little help in the decisions of the courts. The decisions in *Fitzgerald v. State Mutual Building and Loan Association,* 74 N. J. Eq. 440, 69 Atl. 564, and *State v. Superior Court of Marion County,* 177 N. E. (Ind.) 322, lend support to our conclusion. No decision has been brought to our attention supporting a different conclusion.

The order entered by the superior court in the action entitled "In the Matter of the Receivership of Home Savings and Loan Association," appointing Johnson, the director of efficiency, receiver of the association for the liquidation and winding up of its affairs, is affirmed. The costs incurred by the *Attorney General* in this court resisting the appeal of the association in that action shall be charged against the property of the association in the hands of Johnson, as receiver.

Since our affirmance of the order appointing Johnson as receiver in the action entitled "In the Matter of the Receivership of Home Savings and Loan Association," renders the question of the appointment of a receiver in the action commenced by Eckart and Greenbaum moot, we conclude that the appeal of the association in that action should be dismissed without the taxation of any costs in this court in favor of or against anyone. It is so ordered.

All concur.