[No. 26126. Department Two. June 4, 1936.]

THE STATE OF WASHINGTON, *on the Relation of George Berger et al., Plaintiff,* v. CLAY ALLEN, *as Judge of the Superior Court for King County, Respondent.*[1]

[1]Reported in 58 P. (2d) 293.

*Bert A. Northrop* and *James Walter Redden,* for relators.

*Wingate & Suffel* and *John W. Whitham,* for respondent.

HOLCOMB, J.—This is an application for a writ of prohibition. The material facts are briefly as follows:

In July, 1931, following an examination of the affairs of the Home Savings and Loan Association by the state supervisor of savings and loan associations, the director of efficiency, having determined that the association was in an unsafe and unsound condition, directed the supervisor to take possession of the books and property of the association and also, in accordance with Rem. Rev. Stat., § 3735, duly notified the board of directors of the association to restore its affairs to a sound condition within twenty days.

At the expiration of this period, the board of directors having failed to comply with the notice and the department having discovered defalcations approximating one-half million dollars, *The Attorney General,* at the request of the director, instituted proceedings in the superior court of King county for the appointment of the director of efficiency as general receiver of the association. Appointment was accordingly made, and this was affirmed by this court in *In re Home Savings & Loan Ass'n,* 165 Wash. 351, 5 P. (2d) 511. Following the remittitur, and on December 2, 1931, the trial court made an order which reads:

"It appearing to the court from the facts and records herein and from the remittitur of the supreme court of the state of Washington that Harry C. John-

son has been appointed and has qualified as receiver of Home Savings & Loan Association, a building and loan association organized under the laws of the state of Washington, in certain proceedings brought by the attorney general of the state of Washington for the purpose of the dissolution of said association and for the appointment of the director of efficiency as receiver thereof; and the court having rendered its decision therein, which decision has been affirmed on appeal therefrom; and the court being advised, it is

"ORDERED that the Home Savings & Loan Association be and the same is hereby dissolved; that all restraining orders heretofore issued out of this court and all proceedings in which said Home Savings & Loan Association is a party litigant be and the same are hereby continued in full force and effect in favor of Harry C. Johnson as receiver of said Home Savings & Loan Association.

"IT IS FURTHER ORDERED that said Harry C. Johnson as such receiver be and is hereby substituted as a party litigant in all proceedings now pending in the superior court of the state of Washington in place of and as successor to said Home Savings & Loan Association."

This order was entered *ex parte* upon its presentation by the attorney for the receiver.

In December, 1935, Martin Loewing and others, as shareholders of the association and on behalf of all others similarly situated, filed a petition in the superior court proceedings asking for a decree of solvency, for a discharge from liquidation, for the discharge of the receiver and the turning over of the assets in his hands to the alleged duly elected directors of the association, for the calling of an election of the shareholders to vote on the question of reopening, and finally, that the association be declared an existing corporation.

In January, 1936, the relators herein intervened and resisted the petition. Following a hearing, the trial

judge, respondent herein, announced he would enter an order requiring:

"That a general meeting of the shareholders or depositors of the association be held on Wednesday, the 15th day of April, 1936, at the hour of 8 o'clock P. M., at a public meeting place to be thereafter determined by the supervisor; that notice thereof be mailed to the depositors or shareholders by the supervisor and that among other matters the said shareholders be requested to vote on the question of voluntary liquidation of the affairs of said association, and that the supervisor, as receiver, expend from the trust funds in his hands the money necessary for preparing and mailing the notices, rental expenses of the meeting place, and all other costs and expenses incidental thereto, and retaining further jurisdiction of the pending matter."

Relators thereupon brought this proceeding for a writ of prohibition to restrain respondent from entering such an order.

We are convinced that the above order of the superior court was ineffectual in completely dissolving and terminating the association. This order, being entered immediately following the appointment of a general receiver and before an actual or complete liquidation of the corporate affairs, must, under the then existing circumstances, have been merely a judicial act which suspended the business of the corporation without actually terminating the corporate existence. Any other interpretation would not be in consonance with our decision, inasmuch as *The Attorney General* had not gone so far as to ask for a dissolution of the association, but only that the director of efficiency be appointed receiver, and this court granted no greater relief. Complete dissolution was not sought nor granted. There could be no dissolution, strictly speaking, unless the association had lost all power to continue or to resume its business as a going concern. Considering all of the circumstances, we conclude that the order

relied upon as dissolving the association did not have the effect of destroying its juristic entity.

█ The creation and the administration of the affairs of savings and loan associations are matters within the province of the legislature. As stated in *State v. Merrill*, 83 Wash. 8, 144 Pac. 925:

"We think it is sufficient to say that these building and loan or savings and loan associations, as provided for in this act, are within the control of the legislature of the state. They are, in their nature, public associations doing business with the public, as banks, insurance companies and other trust companies, and are subject to regulation on the same theory that these other trust companies are subject to lawful regulation. . . .

"The accounts of these savings and loan associations are, therefore, in their nature public. We think it is not overstating the constitution to say that the legislature has the power under this provision to authorize the state auditor to examine and audit accounts of such trust companies, and in connection therewith to perform such duties as are necessary to a full and fair control of the business of such associations. . . . The legislature we think undoubtedly had the right to impose such duties in connection with the duties of auditor as were necessary to determine the financial standing and character of the business and of the persons connected therewith as would insure the people of the state a solvent going concern."

Thus, while under our laws a savings and loan association is a corporation, it has some of the characteristics of a quasi public corporation. Its creation, by-laws, officers, manner of doing business, investments, expenses, reserves and accounting are all more or less subject to statutory, governmental control and supervision. Because of the inherent nature of such a corporation, particularly as to its large membership, which, for the most part, use it as a safe investment medium for their meager savings and for the building

of homes to be paid for on a small monthly payment plan extending over a number of years, the legislature has placed upon certain state officers the responsibility of protecting the members in dealing with such an association; and while the courts are invested with some powers in receivership and liquidation proceedings, they are much more restricted than is the case with private corporations.

Having determined that the association as a legal entity still exists and that its existence and manner of functioning are within the legislative control, it follows that § 4, chapter 171, Laws of 1935, p. 597, is applicable. That section provides:

"At any time prior or subsequent to the taking over of an association by the supervisor as in this act provided or prior or subsequent to the appointment of a liquidator therefor, such association, when such action is approved by the supervisor and by a two-thirds majority in amount of the shareholders present and voting at a special meeting called as in this act provided, may (first) proceed to voluntary liquidation or (second), being already in liquidation and not indebted otherwise than to its shareholders as such, and its excess losses having been charged pro rata against all classes of outstanding shares other than juvenile shares, to such extent as may have been required by the supervisor, reopen as an active association. In event an association shall elect to voluntarily liquidate, the assets of the association shall be converted into money and shall be applied, first, to the payment of the expenses and indebtedness of the association; second, to the payment of the juvenile shares, and third, to the pro rata payment of the shares of all other members of every class and kind. Nothing herein shall prevent the supervisor from taking over such association at any time during the progress of such voluntary liquidation or of such reopening for active business, as in this act provided for the taking over of associations by such supervisor. Nothing in this section shall limit the right of the supervisor to permit voluntary liquida-

tion after he has taken over an association as provided in this act. Where an association is in voluntary liquidation as in this act provided, it shall pay all fees which would be required by law were it not in such form of voluntary liquidation. All acts of the supervisor and of all other officers and boards, and of all associations and their officers and directors heretofore performed in the manner provided in this section are hereby validated, ratified and confirmed as fully, and to the same extent, as though this act has been in full force, effect and operation when the acts of such boards, officers and associations were so performed.'' Rem. 1935 Sup., § 3717-78 [P. C. § 4564-97].

Under that section, the supervisor of savings and loan associations is vested with considerable discretionary power, and it may be generally said that the courts may not usurp such powers in the absence of arbitrary or capricious action. From the record here, the supervisor does not oppose self-liquidation by the association, although certain conditions must exist or result before he will give his unconditional approval. We are satisfied that the superior court has jurisdiction to make an order looking to self-liquidation. It is not a void order. Further than that, we are not called upon to decide.

The law specifically provides for the calling of a meeting of the shareholders for the purpose of voting. It follows, therefore, that the reasonable expense is a proper charge as an administrative expense in the receivership proceedings.

Relators lay great stress and cite numerous Washington cases upon the principle that, when this court has decided a case and sent it back to the trial court for further proceedings, that court is without jurisdiction to enter any order that does not conform to the decree rendered by this court. Just how far this principle is applicable in receivership, probate, guardianship or other proceedings in which the superior

courts have a continuing special or equity jurisdiction, is not discussed in the briefs nor do we find it necessary to decide.

The writ is denied.

TOLMAN, BLAKE, and BEALS, JJ., concur.

MILLARD, C. J., dissents.

