[No. 30852. Department One. December 15, 1949.]

*In the Matter of the Dissolution and Disincorporation of* NORTHWEST SAVINGS AND LOAN ASSOCIATION.[1]

*The Attorney General* and *John Spiller, Assistant,* for appellants.

*Henderson, Carnahan & Thompson,* for respondents.

SCHWELLENBACH, J.—This is an appeal from a judgment allowing fees to the liquidators of the above association upon a voluntary liquidation thereof.

[1] Reported in 212 P. (2d) 778.

Northwestern Building and Loan Association was incorporated February 26, 1904, with its principal place of business at Tacoma, Pierce county, Washington. Later, on February 17, 1922, it changed its name to Northwest Savings and Loan Association.

At a regular meeting of its shareholders held on July 8, 1935, a resolution was adopted directing that, subject to the approval of the state supervisor of savings and loan associations, all members of the association be paid their shareholdings on a ratable and proportionate basis. At that time, the association owed obligations to its shareholders in the sum of $519,060.03 and had book assets of the value of $595,622.21. By July 12, 1943, 1150 of the 1157 shareholders had been paid par on their shares, leaving assets of $37,043.30. On the latter date, the remaining seven shareholders, who were also the directors of the association, resolved to rescind the prior resolution and to "operate in the normal manner." This action was not approved by the state supervisor. The superior court of Thurston county reversed the action of the supervisor and ordered him to issue to the association a current license to do business. Upon appeal to this court, we reversed the superior court, holding that the action of the supervisor was not arbitrary or capricious. *Northwest Sav. & Loan Ass'n v. Lockwood,* 25 Wn. (2d) 22, 168 P. (2d) 379.

On July 8, 1946, the association again petitioned the supervisor for authority to resume operations. This request was denied under order of October 25, 1946, which stated in part:

". . . therefore, you are ordered to complete the de facto liquidation of the Northwest Savings & Loan Association by distributing the remaining assets proportionately to those shareholders who were of record on July 8, 1935. If it is preferable for the sake of economy or for any other reasons to turn the assets and records over to this office to complete the liquidation, we shall of course be willing to cooperate in this way."

On February 20, 1948, a special shareholders meeting was held, attended by twelve shareholders. Also in attendance was the state supervisor, George L. Barner, and an assistant

attorney general. A resolution was adopted to fully liqui-
date the affairs of the association, to file such papers and
take such proceedings in court as might be necessary, to
submit to the court the amount of reasonable compensation
to be allowed the *de facto* liquidators, and to take such other
and further steps as might be necessary to accomplish the
complete liquidation, dissolution, and disincorporation of
the association.

In compliance with the resolution, a petition was filed in
the superior court for Pierce county, setting forth the his-
tory of the proceedings in connection with the *de facto*
liquidation of the affairs of the association, and praying that
such further proceedings might be had as ordered and
directed by the court, to the end that the objects and pur-
poses, as set forth in the resolution, be accomplished and
carried out.

Upon the filing of the petition, the court ordered publica-
tion of a notice to creditors. A final report was made, setting
out in detail all of the things done since July 8, 1935, in con-
nection with the liquidation of the association. At the final
hearing held July 29, 1948, testimony was given which
showed that there had been some two hundred properties
involved, located in Vancouver, Longview, and Seattle
(most of which were subject to mortgages held by the asso-
ciation), and that all of the assets, liens, mortgages, etc.,
were converted into cash. George Barner, supervisor of
savings and loan, was present at the hearing. He approved
the completion of the *de facto* liquidation and the distribu-
tion of available funds to those shareholders who were of
record on July 8, 1935, but opposed any extra compensation
to the officers for their services as *de facto* liquidators.

The court approved the final report, ordered distribution
to the shareholders, and also ordered that certain fees be
allowed. It found:

"It appearing to the court that H. T. Hansen and I. C.
Rowland, the managing officers of the Association, and S. A.
Gagliardi, their attorney, have since July 8, 1935, performed
extensive and valuable services over, above, and beyond the
ordinary services of officers of such associations or corpora-

tions in converting the assets of said association into cash and in paying the respective shareholders the amount of their respective shares in full, together with their semi-annual dividends, without loss or deduction, and that during said period said officers also acted as *de facto* liquidators, and it is proper in recognition of the services so performed, and results obtained, and the Resolution of the shareholders providing therefor, that the court fix and allow proper, reasonable compensation to said managing officers and to S. A. Gagliardi, their attorney; and the court having duly considered the matter, is of the opinion that there should be allowed to H. T. Hansen and I. C. Rowland, managing officers of the Association who performed all the services as *de facto* liquidators, the following amounts to H. T. Hansen, the sum of $7500.00, to I. C. Rowland, the sum of $2500.00, and to S. A. Gagliardi, Attorney, the sum of $14,000.00:"

It is only from that portion of the order allowing fees that the supervisor is appealing. Apparently, the appellant is not questioning the amount of the fees, but he questions the legal right of the court to make any allowance for such services.

The law covering building and loan associations is found in Rem. Supp. 1945, §§ 3717-120 to 3717-239, inclusive. Sections 3717-223, 3717-224, 3717-225, 3717-226, 3717-227, 3717-228 and 3717-229 provide for liquidation by the super-, visor, under the jurisdiction of the superior court of the county in which the association has its principal place of business. Section 3717-221 provides:

"Any domestic association may determine to enter upon voluntary liquidation, to transfer its assets and liabilities to another association, to merge with another association, to segregate its assets into classes, to charge off its losses in excess of its reserves, or to amend its articles of incorporation or its bylaws.

"Any such liquidation, transfer, merger, segregation, charge-off, or amendment shall be effected by the vote of a majority in amount of the members present, in person or by proxy, at any regular or special meeting of the members called for such purpose.

"Notice of such meeting, stating the purpose thereof, shall be mailed to each member and to the Supervisor, not more than thirty (30) days nor less than ten (10) days before

the date of the meeting, postage prepaid, at his last address as shown upon the books of the association.

"If such liquidation, transfer, merger, segregation, charge-off, or amendment be authorized by the members at the meeting, the directors of the association are authorized and shall effect such action, and the officers of the association shall execute all proper conveyances, documents, and other papers necessary or proper thereunto."

Section 3717-231 provides:

"In any voluntary liquidation of an association, any checks issued in such liquidation or funds representing liquidating dividends or otherwise which remain undelivered for six (6) months following the final liquidating dividend, shall be deposited with the Supervisor, together with any files, records, documents, books of account, or other papers of the association. The Supervisor, in his discretion at any' time after the expiration of one (1) year, may destroy any of such files, records, documents, books of account, or other papers which appear to him to be obsolete or unnecessary for future reference. During five (5) years thereafter, the Supervisor shall deliver any such checks or portions of such funds to the payee, or his legal representative, upon receipt of satisfactory evidence of his right thereto. After said five (5) years, the Supervisor shall cancel all such checks remaining in his possession and issue his check payable to the State Treasurer, for the amount thereof together with any other liquidating funds, and deliver the same to him. Such payment shall escheat to the state, and it shall not be necessary to have such escheat adjudged in any legal proceeding."

No section of the act expressly grants jurisdiction to the courts in the case of voluntary liquidation. However, § 3717-221 provides that notice of the meeting to enter upon voluntary liquidation must be served upon the supervisor. That was done in this instance. He attended the meeting of February 20, 1948, supervised the liquidation, and appeared at the court hearing.

In *State ex rel. Berger v. Allen,* 186 Wash. 403, 58 P. (2d) 293, this court considered the self-liquidation of the affairs of the Home Savings and Loan Association under the provisions of the then existing § 4, chapter 171, Laws of 1935, p. 597, as follows:

" 'At any time prior or subsequent to the taking over of an association by the supervisor as in this act provided or prior or subsequent to the appointment of a liquidator therefor, such association, when such action is approved by the supervisor and by a two-thirds majority in amount of the shareholders present and voting at a special meeting called as in this act provided, may (first) proceed to voluntary liquidation or (second), being already in liquidation and not indebted otherwise than to its shareholders as such, and its excess losses having been charged pro rata against all classes of outstanding shares other than juvenile shares, to such extent as may have been required by the supervisor, reopen as an active association. In event an association shall elect to voluntarily liquidate, the assets of the association shall be converted into money and shall be applied, first, to the payment of the expenses and indebtedness of the association; second, to the payment of the juvenile shares, and third, to the pro rata payment of the shares of all other members of every class and kind. Nothing herein shall prevent the supervisor from taking over such association at any time during the progress of such voluntary liquidation or of such reopening for active business, as in this act provided for the taking over of associations by such supervisor. Nothing in this section shall limit the right of the supervisor to permit voluntary liquidation after he has taken over an association as provided in this act. Where an association is in voluntary liquidation as in this act provided, it shall pay all fees which would be required by law were it not in such form of voluntary liquidation. All acts of the supervisor and of all other officers and boards, and of all associations and their officers and directors heretofore performed in the manner provided in this section are hereby validated, ratified and confirmed as fully, and to the same extent, as though this act has been in full force, effect and operation when the acts of such boards, officers and associations were so performed.' Rem. 1935 Sup., § 3717-78 [P. C. § 4564-97]."

We there said:

"From the record here, the supervisor does not oppose self-liquidation by the association, although certain conditions must exist or result before he will give his unconditional approval. We are satisfied that the superior court has jurisdiction to make an order looking to self-liquidation."

In the instant case, the shareholders had authority under the statute to enter into voluntary liquidation. They did

so under the guidance and order of the supervisor. It was not necessary for them to submit to the jurisdiction of the court. They had power to entirely close the affairs of the association, and, since the proceeds of the liquidation belonged to the shareholders, they had the power to allow reasonable fees to the liquidators. Fearing that some question might later arise as to titles to some of the properties they were disposing of, they decided to submit all of their actions to the court, in order to completely liquidate, dissolve, and disincorporate the association. This was done with the consent and approval of the supervisor.

Having submitted to the jurisdiction of the court, they, as an incident to the liquidation, asked the court to set the fees of the liquidators. Having taken jurisdiction of the subject matter of the entire liquidation proceedings, the court had jurisdiction to set the fees of the liquidators.

The judgment is affirmed.

SIMPSON, C. J., BEALS, GRADY, and DONWORTH, JJ., concur.