GEORGE P. DAURELLE

*v.*

TRADERS FEDERAL SAVINGS AND LOAN
ASSOCIATION OF PARKERSBURG, *et al.*

(No. 10927)

Submitted May 27, 1958. Decided July 3, 1958.

*Steptoe & Johnson, Stanley C. Morris, Jr.,* for plaintiff in error.

*Wm. Bruce Hoff,* for defendants in error.

HAYMOND, PRESIDENT:

This is a proceeding in mandamus instituted in the Circuit Court of Wood County in which the petitioner, George P. Daurelle, seeks a writ to require the defendants, Traders Federal Savings and Loan Association of Parkersburg, a corporation, Virginia Engle, its president, George E. Prince, its secretary and treasurer, and Jess Bango, Judd Dudley, Leland G. Merrill, Robert Burk, George E. Prince, Virginia Engle, Laura Treadway, John T. Jennings, and A. C. Woofter, its directors, to permit the petitioner, a member of Traders Federal Savings and Loan Association of Parkersburg in good standing, to examine and copy from its records the names and addresses of all its members for the purpose of soliciting proxies from such members for use at the annual meeting to enable the petitioner to seek election to membership on its board of directors and to order and direct the defendants not to strike the name of

the petitioner from the membership records of the association or to redeem his savings account in and with the defendant association.

After requests by the petitioner for permission to obtain a list of the names and addresses of the members of the association were refused by the defendants and after he had been advised by the counsel of the Federal Home Loan Bank of Pittsburgh that the only way in which he could obtain a list of the names of the members of the association was to apply for such relief to a court of competent jurisdiction, the petitioner filed his original petition in this proceeding on November 29, 1956, and obtained a rule returnable December 4, 1956, against the defendants, Traders Federal Savings and Loan Association, Virginia Engle, and George E. Prince, which date was extended to December 7, 1956. On December 5, 1956, the petitioner filed an amended and supplemental petition and obtained a rule returnable December 7, 1956, against the defendants, Jess Bango, Judd Dudley, Leland G. Merrill, Robert Burk, George E. Prince, Virginia Engle, Laura Treadway, John T. Jennings, and A. C. Woofter, as directors of the defendant association.

To the original and the amended and supplemental petitions the defendants on December 7, 1956, filed their written demurrer in which numerous grounds were assigned. Pending action on the demurrer to the original and the amended and supplemental petitions, the petitioner on December 21, 1956, filed a second amended and supplemental petition upon which a rule was awarded returnable December 29, 1956, the return date of which was extended until January 3, 1957, at which time the defendants filed their written demurrer to the second amended and supplemental petition which superseded the two former petitions.

By final order entered April 22, 1957, the circuit court, being of the opinion that the pleadings filed by the petitioner were not susceptible of further amendment and that it was not necessary to rule upon the demurrer to

the original and the amended and supplemental petitions, discharged the rules awarded on those pleadings, sustained the demurrer to the second amended and supplemental petition, discharged the rule awarded on that petition, dismissed this proceeding, and awarded costs against the petitioner. To that judgment of dismissal this Court awarded this writ of error upon the application of the petitioner. The defendant John T. Jennings has died during the pendency of this proceeding and the petitioner seeks no relief against his estate on this writ of error.

The circuit court sustained the demurrer to the second amended and supplemental petition on substantially these assigned grounds: (1) The petitioner has failed to invoke and exhaust an available administrative remedy to obtain the relief which he seeks and, for that reason, is not entitled to judicial relief and can not maintain this proceeding in mandamus; (2) he has no common-law or statutory right to obtain from the defendant association a list of the names and addresses of its members; and (3) the defendant association under the provisions of its charter, the form of which is expressly provided by and included in the rules and regulations promulgated by the Federal Home Loan Bank Board, had the right to redeem the savings account of the petitioner on December 31, 1956, and, by the redemption of such account, to terminate the membership of the petitioner in the association as of that date.

The petitioner assigns as error the action of the circuit court (1) in ruling that the petitioner has not exhausted his available administrative remedies; (2) in ruling that the petitioner does not have a common-law right to a list of shareholders of the defendant association; and (3) in ruling that it did not have jurisdiction to compel the officers and directors of the defendant association to retain the name of the petitioner on its list of members or to prevent it from redeeming his savings account.

The material allegations in the second amended and supplemental petition concerning the efforts of the petitioner to invoke administrative remedies available to him

are, in substance, that the Home Loan Bank Board is the agency of the United States Government charged with the supervision of all federal savings and loan associations; that the Home Loan Bank Board of Pittsburgh is the regional office of the Home Loan Bank Board and has local supervision of the defendant association; that petitioner demanded of the Home Loan Bank Board of Pittsburgh enforcement of his right to examine the list of the members of the defendant association by a letter dated July 19, 1956, addressed to the Home Loan Bank of Pittsburgh in which he inquired how a depositor or a group of depositors could obtain access to the membership rolls of the defendant association for the purpose of making an effort to improve its board of directors; that he was denied any and all administrative relief by a letter dated July 20, 1956, written by the counsel of the Federal Home Loan Bank of Pittsburgh which contained the statements that members of a federal savings and loan association are those who hold savings accounts in it, that information as to who are members is of a confidential nature which such associations are not prone to disclose, that in that respect members of such an association are in a different category from stockholders in general business corporations, that if a member of such association can show good reason to obtain a list of members in order to protect himself or other members he can, upon a showing to a court of competent jurisdiction that such information is necessary, obtain an order compelling the association to open its books to him, and that the method indicated is the only way in which a member can obtain access to the rolls of the association; and that petitioner had made other and subsequent demands, both oral and written, upon the Home Loan Bank Board and the Home Loan Bank of Pittsburgh for assistance and relief "without avail."

The material allegations in the second amended and supplemental petition, in which the petitioner insists that he is entitled to a list of the names and addresses of the members of the defendant association, are, in effect, that the defendant association, is a corporate, nonstock home

owners loan and thrift association, organized under and by virtue of the laws of the United States; that its charter provides that all persons holding savings accounts with or borrowing from it are members or shareholders and are entitled to vote in accordance with a prescribed formula at all meetings of its members; that it is governed by a board of directors of not less than five nor more than fifteen persons who must also be members; that the directors are elected for a term of three years at the annual meeting of the members; that approximately one-third of the board of directors is elected at the annual meeting; that its by-laws provide that the annual meeting shall be held on the third Wednesday in January of each year; that both the charter and the by-laws provide that the votes of its members may be cast by proxy; that its management has in the past and will again actively solicit proxies from its members and vote such proxies at the annual meeting for candidates of its choice for members of the board of directors; that the petitioner is the holder of a savings account with the defendant association in the amount of $1413.27, is a member in good standing and is qualified to serve as a director; that he is over twenty one years of age, possesses wide business experience, and desires to be a candidate for the office of director at the annual meeting of the members to be held on January 16, 1957; that it is necessary for him to have an equal opportunity to share with the management the right to solicit proxies from other members if he is to have any reasonable prospect of success; that as a member in good standing and for the sole purpose of becoming a candidate for the office of director, the petitioner has frequently and repeatedly, both orally and in writing, demanded and requested permission of the defendants Virginia Engle, president, and George E. Prince, secretary and treasurer, of the defendant association to examine and copy during regular office hours such of its records as will reveal to him only the names and addresses of its members for the sole and exclusive use and purpose of running for the office of director; that his requests were refused without fair explanation or quali-

fication; and that he was denied an equal opportunity to share with the management the right to solicit proxies from the members of the association.

With respect to the action of the defendant association in redeeming his savings account as of December 31, 1956, which he charges violates a rule of public policy and an implied contract between the association and its members, the allegations of the second amended and supplemental petition, in substance, are that on November 30, 1956, the day after the petitioner filed his original petition in this proceeding, he received notice from the defendant association, informing him that his savings account would be redeemed on December 31, 1956, by direction of its board of directors; that the effect of such redemption is to expel the petitioner without just cause, to deprive him of valuable property rights as a member in good standing, and to deny him the lawful right of running for the office of director at the January annual meeting as a director must be a member in good standing; that the action of the directors in redeeming the savings account of the petitioner and in that way expelling him from the defendant association has been motivated by caprice, passion, and partiality, and was done for the unlawful purpose of perpetuating the directors in office, punishing the petitioner, and warning all other members that they are depositors at the sufferance of the directors and shall be expelled for any act contrary to their wishes; that the redemption of his savings account violates a rule of public policy requiring fair and equal treatment of the members of any federal savings and loan association and violates an implied contract between the defendant association and its members which guarantees each of them fair and equal treatment; that the defendant association is a corporate, nonstock, loan and thrift institution, organized for the mutual benefit of its members to whom all profits and earnings belong on a basis proratable with their savings; that, on information and belief, it is well known that the demands of borrowers for money are at an all time high, that money is in short supply and interest rates are being

raised by all money lending institutions, including the defendant association, and that it has, in the normal and usual course of its business, discounted notes and obligations held by it, at considerable expense, to obtain further working capital; that it is now actively soliciting depositors by newspaper, radio, and other advertising media, and is now accepting money from new depositors for the purpose of obtaining additional working capital; that to redeem the savings account of the petitioner will reduce the working capital of the defendant association and injure it and its members; that in redeeming the savings account of the petitioner the directors have breached their fiduciary duty to act for the best interest of the association and its members; that such redemption, if allowed, will be an unlawful abuse of the applicable provision of the charter of the association; and that the spirit and intent of the redemption provision of the charter are that redemption shall occur only when funds can not be put to profitable use, either by direct loan or by repurchase of notes and other obligations that had been discontinued by the association in the normal and usual course of its business.

The general rule, established by many decisions of state and federal courts, is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the courts will act. 73 C. J. S., Public Administrative Bodies and Procedure, Section 41; 42 Am. Jur., Public Administrative Law, Section 197; *Fahey* v. *Mallonee,* 332 U. S. 245, 67 S. Ct. 1552, 91 L. ed. 2030; *First National Bank of Greeley* v. *Board of County Commissioners,* 264 U. S. 450, 44 S. Ct. 385, 68 L. ed. 784; *Aircraft and Diesel Equipment Corporation* v. *Hirsch,* 331 U. S. 752, 67 S. Ct. 1493, 91 L. ed. 1796; *Red River Broadcasting Company* v. *Federal Communications Commission,* 69 App. D. C. 1, 98 F. 2d 282, certiorari denied, 305 U. S. 625, 59 S. Ct. 86, 83 L. ed. 400; *Home Loan Bank Board* v. *Mallonee,* 196 F. 2d 336; *People of State of California* v. *Coast Federal Savings and*

*Loan Association,* 98 F. Supp. 311; *Woodard v. Broadway Federal Savings and Loan Association of Los Angeles* 111 Cal. App. 2d 218, 244 P. 2d 467; *Abelleira v. District Court of Appeal,* 17 Cal. 2d 280, 109 P. 2d 942, 132 A. L. R. 715. In 73 C. J. S., Public Administrative Bodies and Procedure, Section 41, the text contains this language: "Where an administrative remedy is provided by statute, relief ordinarily must not only be sought initially from the appropriate administrative agency but such remedy usually must be exhausted before a litigant may resort to the courts." The rule which requires the exhaustion of administrative remedies is a long settled rule of judicial administration and applies alike to relief at law and to relief in equity. 73 C. J. S., Public Administrative Bodies and Procedure, Section 41. It has been held that the exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts. *Woodard v. Broadway Federal Savings and Loan Association* 111 Cal. app. 2d 218, 244 P. 2d 467; *Abelleira v. District Court of Appeal,* 17 Cal. 2d 280, 109 P 2d 942, 132 A. L. R. 715; 73 C. J. S., Public Administrative Bodies and Procedure, Section 41. The rule which requires the exhaustion of administrative remedies is, however, inapplicable where no administrative remedy is provided by law. 73 C. J. S., Public Administrative Bodies and Procedure, Section 41; *Riverview Packing Company v. Reconstruction Finance Corporation,* 92 F. Supp. 376; *Bernstein v. Smutz,* 83 Cal. App. 2d 108, 188 P. 2d 48; *Kopczynski v. Camden County,* 2 N. J. 419, 66 A. 2d 882. In *Carter v. City of Bluefield,* 132 W. Va. 881, 54 S. E. 2d 747, in which it appeared that the petitioner had no administrative remedy to challenge the validity of a municipal zoning ordinance before an administrative agency created by the ordinance, this Court held that the issue of validity or invalidity of the ordinance was an issue to be judicially determined in a proceeding in mandamus and that the challenged ordinance was invalid in its application to the property of the petitioner.

Subsection a, Section 1464, Title 12, U. S. C. A., Act of Congress, June 13, 1933, Chapter 64, Section 5, 48 Stat. 132,

contains this language: "In order to provide local mutual thrift institutions in which people may invest their funds and in order to provide for the financing of homes, the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as 'Federal Savings and Loan Associations', and to issue charters therefor, giving primary consideration to the best practices of local mutual thrift and home-financing institutions in the United States."

Subsection a, Section 1462, Title 12 of the foregoing statute defines the term "Board", as used in Subsection a, Section 1464, Title 12, to mean the Federal Home Loan Bank Board. Under Part 142.2, Subchapter C, Title 24, Code of Federal Regulations, any person who has made an application or petition to the Board may request a hearing if such application or petition has been denied or disapproved by the Board. At any time after the filing of any such application or petition and before its consideration by the Board, any interested person may request a hearing upon the application or petition. The Board may order a hearing in connection with the consideration of any matter arising under any provision of the rules and regulations whether or not request for such hearing has been made by any person; and the Board may deny any request for or dispense with any hearing for which provision is made when in its judgment no need for such hearing exists. Part 142.3, Subchapter C, Title 24, Code of Federal Regulations, provides that "If, in the opinion of the Board, a Federal association is in violation of any law or regulation to which it is subject, the Board in any proceeding under the provisions of section 5 (d) (1) of the Home Owners' Loan Act of 1933, as amended, shall, by formal resolution, state the alleged violation of law or regulation and give written notice to such Federal association of the facts alleged to be such violation, addressed to its home office. Such notice shall contain a statement that it is a formal notice issued pursuant to this section. In the event the Federal association does not correct such

violation of law or regulation or perform such legal duty as it may be required to perform within 30 days after the date it shall have been served with such notice, the Board shall give such Federal association 20 days' written notice of the charges against it and of the date on which the Board will conduct a hearing as to such alleged violation or failure to perform. * * *. Such hearing shall be conducted in accordance with the pertinent provisions of Part 109 of this chapter. * * *."

No statute or rule or regulation authorizes any member of a federal savings and loan association to procure or obtain from it a list of the names and addresses of its members or requires any such association to furnish a member with such list. The defendants contend that the petitioner, as a member of the defendant association, does not have the right to obtain such list; that the association and its officers and directors have the right to refuse to permit him to have or obtain it; and that the refusal of the defendant association and its officers to permit him to have or obtain such list does not constitute a violation of any law or regulation. The petitioner in the brief filed in his behalf in this Court concedes that there has been no violation of any law or regulation by the defendants and that no such violation exists.

As the only administrative remedy expressly provided by the rules and regulations is for an alleged violation of any law or regulation to which a federal savings and loan association is subject, and as the refusal of the defendants to permit the petitioner to have or obtain a list of its members, by the admission of both the petitioner and the defendants, is not a violation of any law or regulation, it is clear that neither the federal statute nor the rules and regulations provides any administrative remedy by which the petitioner may obtain the relief which he seeks of requiring the defendants to permit him to obtain from the records of the defendant association a list of the names and addresses of its members as requested by the petitioner.

In the absence of any showing that there is an available administrative remedy to enable the petitioner to obtain the list which he seeks, the rule which requires the exhaustion of administrative remedies by a litigant before he may resort to the courts has no present application and does not preclude the petitioner from seeking judicial relief in this proceeding. For that reason the contention of the defendants that the allegations of the second amended and supplemental petition show that the petitioner has failed to exhaust available administrative remedies because no sufficient application or petition seeking the specific administrative relief of requiring the defendants to permit the petitioner to have or obtain a list of the names and addresses of the members of the defendant association was presented by him to the proper administrative agency need not be given further consideration or determined in this proceeding.

Though the petitioner concedes that the refusal of the defendants to permit him to have or obtain the requested list of the names and addresses of the members of the defendant association did not constitute a violation of any law or regulation, he insists that such refusal violates a common-law right to such information which he claims to have as a member of the defendant association.

Prior to the enactment of the Code of 1931, the corporate statutes dealing with joint stock companies contained certain pertinent provisions relating to list of stockholders, annual reports of directors, and inspection of corporate records.

Section 43, Chapter 53, Code, 1899, provided that "A list of stockholders, showing the number of shares and votes to which each is entitled, shall, for one month before every annual meeting, be hung up in the most public room at the principal office or place of business of the corporation; but the failure to do so shall not affect the validity of the proceedings of such meeting." This statute was enacted by Chapter 96, Acts of the Legislature, 1882, Adjourned

Session, and remained in force until the enactment of the Code of 1931.

Section 46 of the same chapter of the Code of 1899 provided that "The board of directors shall make a report to the stockholders, at the annual meeting, of the condition of the corporation. The report shall show the property and funds belonging to the corporation, and the estimated value thereof; the debts due to it, distinguishing such as are deemed to be good from those considered doubtful or hopeless; the debts and liabilities of the corporation; the amount of capital paid in, and the estimated surplus or deficiency, as the case may be. It shall also state the amount of dividends declared, and the losses incurred or the profits accruing during the preceding year. The board shall furnish to each stockholder requiring it, a true copy of such report, together with a list of stockholders and their places of residence." This section was enacted by Chapter 96, Acts of the Legislature, 1882, Adjourned Session. It was amended by Chapter 35, Acts of the Legislature, 1901, Regular Session, and the provision which directed the board to furnish a copy of the report and a list of the stockholders to any stockholder requiring it was omitted and provisions requiring the board to make a report to the secretary of state were added to the section which, as so amended, continued in force until the enactment of the Code of 1931.

Section 47 of the same chapter of the Code of 1899 provided that "The property and funds, books, correspondence and papers of the corporation, in the possession or control of any officer or agent thereof, shall at all times be subject to the inspection of the board, or a committee thereof appointed for the purpose, or of any committee appointed for the purpose by a general meeting of the stockholders. The minutes of the resolutions and proceedings of the board shall, for thirty days before the annual meeting of the stockholders, be open to the inspection of any stockholder. They shall be produced when required by the stockholders at any general meeting." This section was

enacted by Chapter 96, Acts of the Legislature, 1882, Adjourned Session, and was amended by Chapter 35, Acts of the Legislature, 1901, Regular Session. As so amended, it omitted the requirement that the minutes of the resolutions and proceedings of the board, for thirty days before the annual meeting of the stockholders, should be open to the inspection of any stockholder and provided that "The property and funds, books, correspondence and papers of the corporation, in the possession or control of any officer or agent thereof, shall at all times be subject to the investigation of the board of directors, or a committee appointed for the purpose by a general meeting of the stockholders. The minutes of the resolutions and proceedings of the board shall for thirty days before the annual meeting of the stockholders, be open to the inspection of any committee appointed, in writing, by the holder or holders of at least one-twentieth part of the total value of outstanding shares, or by the holder or holders of such number of shares. They shall be produced when required by the stockholders at any general meeting." The section, as amended, continued in effect until the enactment of the Code of 1931.

In considering the effect of the foregoing three sections of the statute, as enacted in 1882 and incorporated in the Code of 1899, upon the rights of creditors and stockholders of a joint stock corporation, in *Lipscomb's Adm'r.* v. *Condon*, 56 W. Va. 416, 49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938, decided in 1904, this Court, in the opinion delivered by Judge Poffenbarger, said: "Nowhere in our corporation laws does it appear that any of the records required to be kept are in any sense public records. Section 43 of chapter 53 requires a list of the stockholders, showing the number of shares and votes to which each is entitled to be hung up in the most public room at the principal office or place of business of the corporation, for one month before every annual meeting of the stockholders. Section 47 of the same chapter declares that the funds, books, correspondence and papers of the corporation shall be at all times subject to the inspection of the board of

directors or a committee thereof, appointed for the purpose, or of any committee appointed for the purpose by a general meeting of the stockholders. No provision appears to give to the individual stockholder, much less a creditor of his, a creditor of the corporation, or a wholly disinterested person, the right of inspection at all times, or at any time. The board of directors is required by section 46 of chapter 53 to make a report to the stockholders at the annual meeting, showing the condition of the corporation, and then declares that 'the board shall furnish to each stockholder requiring it, a true copy of such report, together with a list of stockholders and their places of residence.' By section 47 of chapter 53, every stockholder has a limited right of inspection. It is only for thirty days before the annual meeting of stockholders, and extends, not to the 'property and funds, books, correspondence and papers of the corporation,' but only to 'the minutes of the resolutions and proceedings' of the board of directors." Though these statements may be considered as dicta they express the sound and correct view that the right of a stockholder of a corporation to obtain and inspect its records was limited and restricted to the extent indicated by the foregoing express statutory provisions.

The provisions of the foregoing sections of the statute were modified by or omitted from the present statute, Section 74, Article 1, Chapter 31, Code, 1931. That section contains this language: "The directors and officers of every corporation of this State shall keep accurate accounts of the corporate transactions. The president of every such corporation shall annually prepare a full and true statement of the affairs of the corporation, which shall be submitted at the annual meeting of the stockholders and filed within twenty days thereafter at the principal office of the corporation in this State, where it shall, during the usual business hours of each secular day be open for inspection by any stockholder of the corporation. The books and records of a corporation shall at all times be subject to examination by any director or by any committee appointed for the purpose at a meeting of the stockholders,

or by the holders of at least one-tenth of the stock outstanding not in a meeting. The minutes and resolutions of the board of directors shall at all times be open to examination by any member of the board or by any committee appointed by the stockholders, and such minutes shall be produced whenever required by the stockholders at any meeting."

The omission from the present statute, Section 74, Article 1, Chapter 31, Code, 1931, and from the Code of 1931, of the provisions of the earlier statutes which gave a stockholder the right to inspect a list of stockholders showing the number of shares and votes to which each was entitled posted at the principal office or place of business of the corporation for one month before every annual meeting, the right to a copy of the annual report of the board of directors, and a list of the stockholders and their places of residence, and the right to inspect the minutes of the resolutions and proceedings of the board of directors during the period of thirty days before the annual meeting of stockholders, is significant. It indicates clearly that the Legislature by the enactment of the current statute intended to abrogate, or at least to limit, the common-law and statutory rights of a stockholder of a joint stock corporation to the extent indicated by the language of the statute and to give him only such rights of examination and inspection of the records of the corporation as are expressly mentioned in the statute.

Though at common law a single stockholder of a corporation is entitled to inspect its books and records at reasonable times for reasonable purposes, *State ex rel. Woodward v. Black Betsey Consolidated Coal Company,* 102 W. Va. 659, 136 S. E. 182, *State ex rel. Keller v. Grymes,* 65 W. Va. 451, 64 S. E. 728, there is no provision of Section 74, Article 1, Chapter 31, Code, 1931, or of that Code, which gives to an individual stockholder the right to inspect its complete records at all times, or at any time. Comparison with and consideration of the provisions of the earlier statutes, which have been omitted from the present statute

and the Code of 1931, and the provisions of the present statute, clearly indicate that in enacting the present statute the Legislature intended to deprive the stockholder of his common-law right to inspect the books and records of the corporation and to give him instead only such rights of that nature as are expressly mentioned in the statute. To give the statute any other meaning or effect would emasculate the statute and defeat the purpose of the Legislature in enacting it. If the stockholder after the enactment of the present statute still retains and may exercise his common-law right of inspection there is no need for the present statute, there was no valid reason for its enactment, and it should be regarded as inoperative and ineffective legislation. This Court will not so regard it.

The statements in prior decisions of this Court support the conclusion that the omission of rights expressly given a stockholder in a joint stock corporation by prior statutes from the present statute and the specification in it of the inspection rights of stockholders and directors abrogate or limit the common-law right of such stockholder to inspect and examine the books and records of such corporation. In *State ex rel. Woodward* v. *Black Betsey Consolidated Coal Company,* 102 W. Va. 659, 136 S. E. 182, the quotation from the opinion of Judge Poffenbarger in *Lipscomb's Adm'r.* v. *Condon,* 56 W. Va. 416, 49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938, previously referred to, is incorporated in the opinion. In *Nolan* v. *Guardian Coal and Oil Company,* 119 W. Va. 545, 194 S. E. 347, point 2 of the syllabus states that "The remedy of directors or stockholders, who have been denied their statutory right of access to the list of stockholders of the corporation (Code 1931, 31-1-74), is not, except as an ancillary remedy, by bill in equity. Mandamus is the proper remedy to compel such inspection." In *Hall* v. *McLuckey,* 134 W. Va. 595, 60 S. E. 2d 280, the opinion contains this statement: "We observe that if the right to inspect and examine the books and records of the corporation accorded by Code, 31-1-74, were the only right asserted in this suit, equity

would not have jurisdiction. Mandamus is the proper remedy for vindication of that right."

Building and loan associations, as do all corporations, owe their creation and existence to statutory provisions. 3 M. J., Building and Loan Associations, Section 2. A building and loan association has been defined as a corporation organized for the purpose of encouraging industry, frugality, home-building, and saving among its members and for the purpose of assisting them to accumulate and invest their savings by providing a fund from periodical payments on their stock or otherwise, to be loaned to them and other persons. 3 M. J., Building and Loan Associations, Section 3. Such associations were not originally intended to foster extravagance or to encourage the building of expensive dwellings. Their primary purpose was and should continue to be to promote industry, frugality and saving, and to convert shiftless and discouraged persons into self-reliant and contented home builders. *Archer* v. *Baltimore Building and Loan Association,* 45 W. Va. 37, 30 S. E. 241.

The first statute in this State providing for the formation of building and loan associations was enacted February 4, 1867, and such associations have consistently been governed and regulated by statutes which are separate and distinct from those which apply to other types of corporations. There are essential differences between mutual thrift and building and loan associations and ordinary corporations. By Section 4, Article 8, Chapter 31, Code, 1931, every building and loan association engaged in the transaction of business in this State is placed under the supervision of the department of banking.

Section 2, Chapter 33, Acts of the Legislature, 1933, Second Extraordinary Session, Serial Section 3242 (50), Michie's Code of 1955, annotated, provides that: "Whenever, by the terms of any general or special laws of this state, any restriction is imposed upon the conduct in this state of any building and loan association or company or savings and loan association or company or savings bank

or any other association or corporation, the same shall not apply to the affairs or conduct of the business in this state of any savings and loan association formed under and pursuant to the act of congress known as the home owners' loan act of one thousand nine hundred thirty-three, as the same may be amended from time to time, but such federal savings and loan association or associations may conduct business in this state according to the terms of the said home owners' loan act and the federal home loan bank act and the rules and regulations from time to time fixed and prescribed by the federal home loan bank board and the federal home loan bank, and may do all things authorized or required by the said acts of congress, as amended from time to time, whereby the said rules and regulations and the said federal savings and loan association or associations shall not be deemed foreign corporation or corporations as defined by any general or special law of this state."

Section 5, Chapter 33, Acts of the Legislature, 1933, Second Extraordinary Session, Serial Section 3242 (53), Michie's Code of 1955, annotated, also provides that "Any building and loan association or company or savings and loan association or company or savings bank or any other association or corporation organized under the laws of this state may convert into a federal savings and loan association according to the terms of the federal home loan bank act and the rules and regulations of the federal home loan bank board, as the same may be amended from time to time, by a resolution to such effect adopted at a meeting of the stockholders of any such association or corporation by the affirmative vote of a majority of the shareholders present in person or by proxy. Whenever any such association or corporation shall so convert itself into a federal savings and loan association, it shall thereupon come under the sole supervision of the federal home loan bank or the federal home loan bank board. At the time when such conversion becomes effective all the property of such association or corporation, including all its right, title, and interest in and to all property of whatsoever kind, whether

real, personal, or mixed, and things in action, and every right, privilege, interest, and asset of any conceivable value of benefit then existing, belonging, or pertaining to it, or which would enure to it, shall immediately by act of law and without any conveyance or transfer or assignment, and without any further act or deed, be vested in and become the property of the federal savings and loan association, which shall have, hold, and enjoy the same in its own right as fully and to the same extent as the same was possessed, held, and enjoyed by such association or corporation so converting, and the federal savings and loan association as of the time of the taking effect of such conversion shall succeed to all the rights, obligations, and relations of such association or corporation."

It should be observed that the statute of this State relating to the conversion of a building and loan association or a savings and loan association organized under the laws of this State, which is converted into a federal savings and loan association and when so converted comes under the sole supervision of the federal home loan bank board, and the federal statutes under which a federal savings and loan association is created, and the rules and regulations for the federal savings and loan system contain no provision which confers upon a member of such association any right to inspect the records of such association for the purpose of obtaining a list of the names and addresses of its members.

In 12 C. J. S., Building and Loan Associations, Section 23 (3), the text contains the statement that under some statutes a stockholder in a building and loan association has the right to inspect its books but under other statutes this right is denied and that "where no statute confers the right of inspection no such right will be implied." See also *State ex rel. Schomberg* v. *Home Mutual Building and Loan Association,* 220 Wis. 649, 265 N. W. 701.

In *State ex rel. Wicks* v. *Puget Sound Savings and Loan Association,* 8 Wash. 2d 599, 113 P. 2d 70, 134 A. L. R. 696, a proceeding in mandamus in which the plaintiffs sought a

writ to compel the defendant, a building and loan association, and its officers and directors, to permit the plaintiffs as members to inspect the records of the association, the court held that the plaintiffs did not have the right to enforce an inspection of the records of the association and affirmed the judgment of the lower court which denied the writ. The opinion in that case contains these pertinent statements:

"This court has recognized a distinction between ordinary corporate shareholders and persons designated as shareholders under our savings and loan association act, Rem. Rev. Stat. (Sup.) ss 3717-1 to 3717-112 * * *. In the cases of *In re Krueger's Estate,* 180 Wash. 165, 39 P. (2d) 381, and *Rummens* v. *Home Savings & Loan Ass'n,* 182 Wash. 539, 47 P. (2d) 845, 100 A. L. R. 570, we stated that, although members of savings and loan associations are called shareholders, these associations are essentially different in character from ordinary stock companies, and, in the latter of the two cases cited, we stated that the persons called shareholders in these associations are more like depositors than investors in corporate stock. In the case of *In re Puget Sound Savings & Loan Ass'n,* D. C., 49 F. (2d) 922, it is said that the relation of shareholders in savings and loan associations under our act is *sui generis.*

"These associations are creatures of statute, and are quasi-public in their nature, *Bank of Fairfield* v. *Spokane County,* 173 Wash. 145, 22 P. (2d) 646, and *State ex rel. Berger* v. *Allen,* 186 Wash. 403, 58 P. (2d) 293. In the latter case we stated: 'Thus, while under our laws a savings and loan association is a corporation, it has some of the characteristics of a quasi public corporation. Its creation, by-laws, officers, manner of doing business, investments, expenses, reserves and accounting are all more or less subject to statutory, governmental control and supervision. Because of the inherent nature of such a corporation, particularly as to its large membership, which, for the most part, use it as a safe investment medium for their meager savings and for the building of homes to be

paid for on a small monthly payment plan extending over a number of years, the legislature has placed upon certain state officers the responsibility of protecting the members in dealing with such an association; and while the courts are invested with some powers in receivership and liquidation proceedings, they are much more restricted than is the case with private corporations.' "

In *State ex rel. Schomberg v. Home Mutual Building and Loan Association,* 220 Wis. 649, 265 N. W. 701, also a proceeding in mandamus in which the plaintiff, a member of a defendant building and loan association, sought a writ to compel examination of its books by a certified public accountant in behalf of the plaintiff, the court affirmed the judgment of the trial court which refused to grant the writ. In that case the plaintiff based her right to examine the records of the defendant upon a state statute which provided that "the books of every corporation containing the stock subscription and accounts shall at all reasonable times be open to the inspection of the stockholders." The three headnotes to the case, as reported in 265 N. W. 701, contain these statements: "1. Statute authorizing inspection of corporation books by stockholders *held* not to entitle holder of paid-up stock in building and loan association to examine books of association. 2. Statute authorizing inspection of bank's stock book by bank stockholders *held* not to confer similar right on shareholders of building and loan associations, since such association was not a banking corporation. 3. Owner of paid-up stock in building and loan association *held* not entitled to examine books of association in absence of statutory provision authorizing such examination." In the opinion the court said: "This statute applies to corporations organized under the general law. Building and loan corporations did not exist in the state and therefore were not contemplated as within its terms when it was enacted in 1853. It was a statutory enactment of a common-law right, somewhat broadened. * * * . The common-law rule was not formulated with reference to building and loan corporations. From the nature of the difference between

the relations of stockholders of ordinary corporations and shareholders of building and loan corporations to their respective corporations, the reasons for the rule of the statute do not apply, and when the reason for a rule fails the application of it is denied. The paid-up shareholder of a building and loan corporation is much like a creditor of the corporation. The corporation owes him the amount of money denoted by its certificate. * * * . The rights of a building and loan shareholder or member are fixed by ch. 215, Stats. No provision for examination of the books of a building and loan corporation by a shareholder is contained in ch. 215. * * * . It has not conferred that right upon shareholders of building and loan corporations. This implies that had the legislature considered any right of examination by the shareholder necessary or proper for his protection, it would have conferred such right upon him as it did upon stockholders of banks." In *State ex rel. Cotonio* v. *Italo-American Homestead Association,* 177 La. 766, 149 So. 449, the court held that under a state statute relating to building and loan corporations which contained no provision which authorized a shareholder to examine the records of such corporation a member of such corporation had no right to examine its records.

Inasmuch as the statute of this State relating to building and loan associations and savings and loan associations and the federal statute and the federal rules and regulations governing federal savings and loan associations do not confer upon a member of such association any right to inspect its books and records, and in view of the holding in the cases of *State ex rel. Wicks* v. *Puget Sound Savings and Loan Association,* 8 Wash. 2d 599, 113 P. 2d 70, 134 A. L. R. 696; *State ex rel. Schomberg* v. *Home Mutual Building and Loan Association,* 220 Wis. 649, 265 N. W. 701; and *State ex rel. Cotonio* v. *Italo-American Homestead Association,* 177 La. 766, 149 So. 449, the inescapable conclusion is that in the absence of a statute or rules and regulations which confer the right of inspection upon a member of a federal savings and loan association, an individual member of such association has no common-

law or statutory right to inspect its books and records; and the petitioner, as a member of the defendant association, can not enforce his alleged right to obtain a list of the names and addresses of its members in this proceeding in mandamus.

The petitioner cites and strongly relies upon *Guthrie* v. *Harkness*, 199 U. S. 148, 26 S. Ct. 4, 50 L. ed. 130, to sustain his contention that he has a common-law right to inspect the records to obtain a list of the names and addresses of the members of the defendant association. In that case the right of a stockholder of a national bank to inspect the books of the bank was involved. The Supreme Court of Utah held that a stockholder of a national bank had a common-law right in that State to the inspection which he demanded and that such right had not been restricted by any provision of the Act of Congress regulating the business of national banks. The Supreme Court of the United States affirmed the decision of the Supreme Court of Utah. As federal savings and loan associations are not banks, *People of State of California* v. *Coast Federal Savings and Loan Association*, 98 F. Supp. 311; *State ex rel. Schomberg* v. *Home Mutual Building and Loan Association*, 220 Wis. 649, 265 N. W. 701; *State ex rel. Cleary* v. *Hopkins Street Building and Loan Association*, 217 Wis. 179, 257 N. W. 684, and are not regulated by the national banking statutes but are regulated by entirely different statutes and rules and regulations, the *Guthrie* case is readily distinguishable from and its holding does not apply to or control the decision in the instant proceeding.

The charter of the defendant association, the form of which is included in the rules and regulations for the federal savings and loan system, provides for the withdrawal of savings accounts of the association by the holders of such accounts and for the redemption by the association of all or any part of its savings accounts. Section 6 of Part 144.1, Subchapter C, Title 24, Code of Federal Regulations, provides that "Upon receipt of a written request from any holder of a savings account of the asso-

ciation for withdrawal from such account of all or any part of the withdrawal value thereof, the association shall within 30 days pay the amount requested; *Provided,* that if the association is unable to pay all withdrawals requested at the end of 30 days from the date of such requests, it shall then pay all withdrawals requested in accordance with such methods and procedures as to amounts and allotments of funds for such purposes as shall be provided in regulations made by the Home Loan Bank Board in effect at the date of the request for withdrawal." As to the redemption of savings accounts, Section 7 of Part 144.1, Subchapter C, Title 24, Code of Federal Regulations, provides that "At any time sufficient funds are on hand, the association shall have the right to redeem, by lot or otherwise as the board of directors may determine, all or any part of any of its savings accounts on June 30 or December 31, by giving 30 days' notice of such redemption by registered mail addressed to the holder of each such savings account at his last address as recorded on the books of the association. The association may not redeem any of its savings accounts when there is an impairment of its capital or when it has any request for withdrawal which has been on file and unpaid for more than 30 days. The redemption price of each savings account redeemed shall be the full value thereof, as determined by the board of directors, but in no event shall the redemption price be less than the withdrawal amount of such savings account. * * *." These rules and regulations have the force and effect of law and are noticed judicially by the courts. Section 4, Article 1, Chapter 57, Code, 1931; *Community Federal Savings and Loan Association* v. *Fields,* 8 Cir., 128 F. 2d 705; *Standard Oil Company of California* v. *United States,* 9 Cir., 107 F. 2d 402.

From the foregoing provisions of the rules and regulations for the federal savings and loan system, in which the form of the charter of the defendant is incorporated and is a part of the rules and regulations, it is clear that a member of a federal savings and loan association has

the right to withdraw his savings account at any time, if he makes a written request upon the association to withdraw such account, and to be paid its withdrawal value by the association within thirty days after it receives such written request, subject only to the provision that if the association is unable to pay all withdrawals requested at the end of thirty days from the date of such request it shall pay all requested withdrawals in accordance with such methods and procedures as to amounts and allotment of funds for such purpose as shall be provided by the Home Loan Bank Board in effect at the date of the request for withdrawal; and that a federal savings and loan association has the right, whenever sufficient funds are on hand, to redeem all or any part of any of its savings accounts on June 30 or December 31 by giving thirty days notice of such redemption in the manner provided, and that the exercise of this right is subject only to the provision that it may not redeem any of its savings accounts if there is an impairment of its capital or if it has any requests for withdrawal which have been on file and unpaid for more than thirty days. These specific rights of the member to withdraw his savings account and of the association to redeem it are complementary. Their exercise is limited only to the extent indicated by the express provisions of the rules and regulations. Under Section 7, Part 144.1, Subchapter C, Title 24, Code of Federal Regulations, a federal savings and loan association has the right to redeem, by lot or otherwise as the board of directors may determine, all or any part of its savings accounts on June 30 or December 31, in the manner and subject to the conditions provided by such rules and regulations, and upon compliance with the requirements of such rules and regulations the redemption of a savings account of a member is valid and terminates his membership in such association.

As the allegations of the second amended and supplemental petition do not sufficiently charge fraud upon the part of the defendant association in its redemption of the savings account of the petitioner and do not charge that

the redemption of his savings account occurred when there was an impairment of the capital of the association or when it had any requests for withdrawals which had been on file and unpaid for more than thirty days, the allegations of the second amended and supplemental petition do not show that in the redemption of the savings account of the petitioner the association violated any provision of the rules and regulations or that its exercise of its right to redeem the savings account of the petitioner was unjustified or invalid. On the contrary, having complied with the requirements of the rules and regulations, the action of the defendant association in redeeming the savings account of the petitioner and in terminating his membership in the association as of December 31, 1956, was in all respects regular and valid.

This Court in many cases has held that he who seeks relief by mandamus must show a clear legal right to the remedy. See *Hockman, Sheriff* v. *The County Court* of *Tucker County,* 138 W. Va. 132, 75 S. E. 2d 82, and the cases there cited. The petitioner has not satisfied that requirement in this proceeding.

The judgment of the circuit court sustaining the demurrer to the second amended and supplemental petition and dismissing this proceeding at the cost of the plaintiff is affirmed.

*Affirmed.*