680 S.E.2d 40

CBC HOLDINGS, LLC, a West Virginia Limited Liability Company, in its Own Behalf and in Behalf of Other Owners of Undivided Interests in the Minerals Underlying the Realty in Question, Plaintiffs Below, Appellants

v.

DYNATEC CORPORATION, USA, a Foreign Corporation Not Licensed to Do Business in West Virginia; Dynatec Energy, Inc., a Foreign Corporation Licensed to Do Business in West Virginia; Dynatec Drilling, Inc., a Foreign Corporation Licensed to Do Business in West Virginia; New Gauley Coal Corporation, a West Virginia Corporation; and the Other Unknown Heirs, Successors and Assigns of Hugh K. Cosgray, Catharine Cosgray, Cora B. Stewart, E.E. Stewart, I.C. Cosgray, W.B. Cosgray, T.L. Cosgray, John A. Cosgray, Lucy L. Cosgray, Tolla Sole, Lydia Booth, And Bertha D. Cosgray, Defendants Below, Appellees.

No. 34267.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 25, 2009.

Decided March 27, 2009.

Larry L. Skeen, Skeen & Skeen, Charleston, for the Appellants.

Jonathan L. Anderson, Brian R. Swiger, Blair M. Gardner, Jackson Kelly PLLC, Charleston, for the Appellees.

McHUGH, Senior Status Justice:[1]

Appellant CBC Holdings, LLC ("CBC") seeks relief from an order of the Circuit Court of Wetzel County through which the trial court concluded that the declaratory judgment action CBC filed to resolve issues of ownership relating to the coalbed methane gas ("coalbed methane") being extracted by Appellee Dynatec Corporation, USA, ("Dynatec") was not ripe for decision due to Appellant's failure to exhaust administrative reme-

---

**1.** Pursuant to administrative order entered March 23, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was recalled for temporary assignment to the Supreme Court of Appeals of West Virginia under the provisions of Article III, section 8 of the Constitution of West Virginia.

dies available under the Coalbed Methane Act ("Act").[2] Contrary to the representations of Dynatec and the other corporate Appellees,[3] Appellant asserts that the Act does not grant authority to the Division of Oil and Gas ("Division") to address by ruling or remedy the ownership issues it has raised. After carefully scrutinizing the Act's provisions in conjunction with the arguments raised by the parties, we conclude that the trial court committed error by refusing to address the ownership issues raised by Appellant on the grounds of CBC's failure to exhaust its administrative remedies. Accordingly, we reverse and remand this matter to the trial court.

## I. Factual and Procedural Background

Appellant filed a declaratory judgment action with the lower court on January 22, 2007, through which it sought to challenge Dynatec's right to extract coalbed methane from the Pittsburgh seam of coal on land situate in Wetzel County.[4] What CBC seeks to establish is that the lease agreement Dynatec entered into with Appellee New Gauley Corporation does not include the mineral rights to the coalbed methane based on the failure of the former surface owners to expressly transfer such rights.[5]

Through its complaint, CBC sought a declaration that Dynatec was legally entitled to remove coal from the Pittsburgh coal seam but that it had no correspondent right to extract coalbed methane from that seam. Appellant also sought an adjudication of subsurface trespass against Dynatec and an accounting as to the coalbed methane that has been produced and marketed from the property at issue. As alternative relief, CBC sought damages in connection with the alleged drainage of coalbed methane from its property based on the positioning of Dynatec's wells.[6]

Arguing that CBC's claims and the remedies for those claims "fall squarely within the administrative procedures set forth in the Act," Dynatec moved to dismiss Appellant's complaint for failing to exhaust its administrative remedies. Upon consideration of the arguments raised by Dynatec in support of its motion to dismiss, the trial court ruled by order of November 16, 2007, that CBC had not exhausted the remedies available to it under the Act. Rather than granting a dismissal of the complaint,[7] however, the trial court sent the matter to the Division to allow it to rule on "the drilling permits and coalbed methane formation ownership." The trial court expressly stayed a ruling on Dynatec's motion to dismiss during the pendency of the Division's consideration of the referred matter.[8]

2. *See* W.Va.Code §§ 22–21–1 to –29 (2002 & Supp.2008).

3. Also named as Appellees are Dynatec Energy, Inc. and Dynatec Drilling, entities affiliated with Dynatec Corporation, U.S.A. that are engaged in the business of drilling for coalbed methane. New Gauley Corporation is the owner of the Pittsburgh seam of coal that was leased to two of the Dynatec Appellees. For ease of discussion, references to the position of Dynatec incorporate by reference the additional corporate defendants.

4. The land at issue is covered by two leases. Under one lease with Western Pocahontas Properties Limited Partnership ("WPP") and New Gauley Coal Corporation, the leased area comprises 25,987 acres located in Church, Center, Clay, and Grant Districts in Wetzel County. The second lease is with WPP and covers 16,066 acres located in Church and Clay Districts in Wetzel County.

5. When the surface rights of various tracts of land owned by Hugh K. Cosgray, Catharine Cosgray, Cora B. Stewart, and E.E. Stewart were partitioned and allotted to children and heirs, the mineral rights were not specifically addressed. Consequently, CBC argues and seeks to establish that those mineral rights remain with the prior owners of the surface rights to the respective tracts of land.

6. Appellant claims that the Dynatec boreholes and casings are placed so close to its property that the Dynatec Appellees are "taking and draining the coalbed methane from the plaintiffs' [CBC's] coalbed methane formations."

7. Appellant incorrectly asserted both in its docketing statement and in its petition for appeal that the trial court had dismissed its complaint. *See infra* n. 8.

8. The record makes clear that no final order has been entered by the trial court. Our decision to issue an opinion, rather than dismissing this case as improvidently granted, is compelled by the futility of referring this matter to the Division given the clear lack of administrative authority for resolving issues of coalbed methane ownership. *See discussion infra.*

Through this appeal, CBC seeks to reverse the trial court's decision that the ownership issues Appellant raised in its complaint must be ruled upon by the Division before the trial court can make any declaration as to Dynatec's right to be extracting coalbed methane pursuant to the provisions of its lease with the New Gauley Corporation.

## II. Standard of Review

■ As we recognized in *White v. Haines*, 217 W.Va. 414, 618 S.E.2d 423 (2005), "we accord plenary review to questions of law, including the interpretation of statutory provisions: 'Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review.' Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't*, 195 W.Va. 573, 466 S.E.2d 424 (1995)." Because the issues on appeal clearly involve the trial court's interpretation of the Act, we apply a *de novo* standard of review to the order which is the subject of this appeal.

## III. Discussion

At the heart of this appeal is disagreement regarding the procedures that must be followed to reach the ultimate question of who rightfully owns the coalbed methane that Appellees are currently extracting from the Pittsburgh seam. Appellees convinced the trial court that the Division must first make certain factual determinations before the circuit court can rule upon the issue of coalbed methane ownership.[9] CBC maintains that there is no predicate ruling required by the Division and, furthermore, that the Division lacks the authority to rule upon the issues that the trial court has directed through its order.[10]

9. Appellees argue that the following factual issues must be addressed by the Division: (1) identify the specific well that is affecting lands owned by Appellant; (2) determine the drainage pattern of that well; and (3) decide whether Appellant's land is being affected by the drainage of the Dynatec well.

10. Appellees acknowledged in their memorandum in support of the motion to dismiss that the circuit court is the proper tribunal to decide issues of coalbed methane ownership: "To the extent the Plaintiff has a conflicting claim to the

In its November 16, 2007, order, the trial court expressly "acknowledge[d] that the Defendants [Dynatec Appellees] may not be the owners of the coalbed methane in the Pittsburgh Seam." But rather than delve into this admittedly thorny issue which is the crux of Appellant's declaratory judgment action, the trial court opted to send this matter to the Division for a ruling on "whether the Defendants had the right to drill and extract methane from the aforementioned coalbed." Appellant argues that the Act's provisions demonstrate a narrowly tailored approach to the regulation of coalbed methane extraction, an approach that does not grant the Division authority to resolve issues of conflicting ownership.

With the adoption of the Act in 1994, the Legislature included a recitation of the public policy concerns and legislative findings that impelled its passage. Among those findings was a declaration that the objective of the Act was to "encourage and ensure the fullest practical recovery of coal and coalbed methane in this state and to further ensure the safe recovery of both natural resources."[11] W.Va.Code § 22-21-1(a). Through the procedures specified in the Act, the Legislature sought to "provide all coalbed methane operators and coalbed methane owners with an opportunity to recover their just and equitable share of production." *Id.*

Under the Act, it is unlawful for any entity to extract coalbed methane without first obtaining a permit from the Division. *See* W.Va.Code § 22-21-6(a). To obtain a permit, the applicant must identify each coal operator and coal owner of record for any coal seam which is to be penetrated by a proposed well; is within 750 horizontal feet of any portion of the proposed well bore; or is within 100 vertical feet of the designated

actual ownership of [coalbed methane], the Defendants agree that this narrow issue is one to be decided by this Court."

11. As an initial matter, the Legislature recognizes that "the value of coal is far greater than the value of coalbed methane and any development of the coalbed methane should be undertaken in such a way as to protect and preserve coal for future safe mining and maximum recovery of the coal." W.Va.Code § 22-21-1(a).

completion coal seams of the proposed well. *See* W.Va.Code § 22–21–6(b). The application must be accompanied by "the consent and agreement of the coal owner" and a certificate indicating compliance with the notice provisions set forth in West Virginia Code § 22–21–9.[12]

Any person entitled to notice under the Act is authorized to file comments with the Division in response to an application to extract coalbed methane. *See* W.Va.Code § 22–21–10 (providing fifteen days for filing comments after filing of permit application). Similarly, all coal owners have fifteen days to file written objections to the application for permission to drill for coalbed methane. *See* W.Va.Code § 22–21–11. Upon its review of the application, the Chief of the Division can issue a permit at any time if the applicant certifies that the Act's notice provisions have been met and that there are no objections to the application.[13] Only if there are comments or objections filed in connection with the permit application is a hearing required before the Review Board.[14] *See* W.Va.Code § 22–21–13.

In the event of a timely filed comment or objection, a hearing is scheduled before the Review Board. At this hearing, the Review Board is charged to consider twelve factors[15]

---

12. Notice has to be provided under the Act to the following entities:

(1) The owners of record of the surface of the tract on which the coalbed methane well is to be located;

(2) The owners of record of the surface of any tract which is to be utilized for roads or other land disturbance;

(3) Each coal owner and each operator (i) from whom a consent and agreement provided for in section seven [§ 22–21–7] of this article is required, or (ii) whose coal seam will be penetrated by the proposed coalbed methane well or is within seven hundred fifty feet of any portion of the well bore; and

(4) Each owner and lessee of record and each operator of natural gas surrounding the well bore and existing in formations above the top of the uppermost member of the "Onodaga Group" or at a depth less than six thousand feet, whichever is shallower. Notices to gas operators shall be sufficient if served upon the agent of record with the office of oil and gas. W.Va.Code § 22–21–9(a).

13. Based on the limited nature of the record before us and disagreement of the parties on this issue, we are unclear as to whether the permits obtained by Dynatec were issued by the Division in the streamlined manner allowed under the Act where no objection is filed or whether there were hearings held before the Review Board. *See infra* n. 14.

14. While Appellees represent that CBC did not file any objections or comments to Dynatec's permit applications, Appellant stated during oral argument that it had filed objections and comments to those permits.

15. Those twelve factors are:

(1) Whether the drilling location is above or in close proximity to any mine opening, shaft, entry, travelway, airway, haulageway, drainageway or passageway, or to any proposed extension thereof, any abandoned, operating coal mine or any coal mine already surveyed and platted but not yet being operated;

(2) Whether the proposed drilling can reasonably be done through an existing or planned pillar of coal, or in close proximity to an existing or planned pillar of coal, taking into consideration the surface topography;

(3) Whether the proposed well can be drilled safely, taking into consideration the dangers from creeps, squeezes or other disturbances due to the extraction of coal;

(4) The extent to which the proposed drilling location unreasonably interferes with the safe recovery of coal or coalbed methane;

(5) The extent to which the proposed drilling location will unreasonably interfere with present or future coal mining operations on the surface including, but not limited to, operations subject to the provisions of article three [§§ 22–3–1 et seq.] of this chapter;

(6) The feasibility of moving the proposed drilling location to a mined-out area, below the coal outcrop, or to some other location;

(7) The feasibility of a drilling moratorium for not more than one year in order to permit the completion of imminent coal mining operations;

(8) The methods proposed for the recovery of coal and coalbed methane;

(9) The practicality of locating the well on a uniform pattern with other wells;

(10) The surface topography and use;

(11) Whether any stimulation of the coal seam will render such seam or any other workable coal seams unmineable or unsafe for mining; and

(12) Whether the director of the office of miners' health, safety and training has submitted recommendations as to the safety of any proposed stimulation. In considering any recommendations made by the director of the office of miners' health, safety and training, the board shall incorporate such recommendations in its findings, conclusions and order unless the board determines that there is clear and convincing evidence on the record supporting

for the purpose of assuring that stimulation of an affected workable coal seam "will not render such seam or any other workable coal seam ... unmineable or unsafe for mining." W.Va.Code § 22–21–13(c). Following the conclusion of the hearing, the Review Board is required to issue written findings of fact that address relevant considerations regarding the twelve factors delineated in subsection (b). *See* W.Va.Code § 22–21–13(b). We observe that not one of these twelve factors includes any concern regarding a challenge to the ownership of the coalbed methane.[16]

In addition to the permitting process, the Act sets forth procedures sanctioning the pooling of interests to create a drilling unit which may be followed in the absence of a voluntary pooling agreement.[17] *See* W.Va. Code §§ 22–21–15 to 21. Pursuant to these provisions, individuals with relatively minor ownership interests are allowed to benefit from the drilling operations of others at a reduced financial outlay. Appellees suggest that had CBC availed itself of the involuntary pooling procedures outlined in the Act it could have remedied the issues that were raised in the declaratory judgment action. We disagree.

■■■ As support for its position, Appellees reference the provision that permits a party seeking a pooling arrangement to raise issues concerning the "nature and extent of ownership of each coalbed methane owner or claimant and whether conflicting claims exist." W.Va.Code § 22–21–17(b)(6). While this statutory provision acknowledges the potential for disagreement regarding the ownership of coalbed methane, the Act does not seek to provide any basis for resolving conflicts of ownership when they occur. In *Energy Development Corp. v. Moss,* 214 W.Va. 577, 591 S.E.2d 135 (2003), we observed that

"*the [Coalbed Methane] statute completely avoids and eschews any attempt at deciding ownership of coalbed methane.*" *Id.* at 594, 591 S.E.2d at 152 (emphasis supplied). The only suggestion the Act provides for resolving conflicts regarding ownership, as we explained in *Moss,* is to encourage parties to a potential pooling arrangement to reach a "voluntary agreement," or, alternatively, rely upon a "final judicial determination." W.Va. Code § 22–21–17(k); *see Moss,* 214 W.Va. at 595, 591 S.E.2d at 153.

■ In view of the clear decision of the Legislature to circumvent the issue of coalbed methane ownership, which is the gravamen of Appellant's complaint, giving the Division an additional opportunity to essentially affirm that Dynatec produced the necessary documentation required under the Act for issuing coalbed methane permits [18] seems ill-advised. In our opinion, referring this matter to the Division will not assist the trial court in making a decision regarding who owns the subject mineral rights because the provisions of the Act make clear that the West Virginia Division of Oil and Gas does not have the authority to resolve issues of conflicting ownership claims to coalbed methane. Consequently, the administrative referral directed by the trial court appears unlikely to produce a ruling bearing on the merits of the ultimate issue—the ownership of the coalbed methane currently being extracted from the Pittsburgh seam by Dynatec.

We are similarly unpersuaded by Appellees' argument that CBC failed to heed remedies available under the Act before filing its declaratory judgment action with the circuit court. Other than the pooling provisions of the Act, which clearly are not aimed at resolving conflicting issues of ownership as discussed above,[19] the only other provision of

---

a finding, conclusion or order inconsistent with such recommendations.
W.Va.Code § 22–21–13(b).

16. *See supra* n. 15.

17. The Act provides that a "party claiming an ownership interest in the coalbed methane may file an application with the chief [of the Division] to pool ... (ii) separately owned tracts ... to form a drilling unit for the production of coalbed methane from one or more coalbed methane wells." W.Va.Code § 22–21–15(a).

18. And, if Dynatec is correct in asserting that Appellant had notice of the permit applications and did not file timely comments or objections, CBC should not be allowed to belatedly raise objections with the Division predicated on mineral ownership.

19. *See* W.Va.Code § 22–21–17(k) (contemplating "resolution of conflicting claims either by voluntary agreement of the parties or a final judicial determination").

the Act that Appellees claim that CBC failed to seek relief under is West Virginia Code § 22–21–27. Under that section, the Chief of the Division and the Review Board both have authority to seek injunctive relief in connection with contemplated or actual violations of the Act. While the statute extends its remedial reach to "any person who is or will be adversely affected by such violation or threatened violation," the availability of injunctive relief is of no effect to CBC unless it can cite to a specific provision of the Act that Dynatec has violated or is about to violate. W.Va.Code § 22–21–7(e). Because there is no provision under the Act that makes demonstration of ownership a prerequisite to obtaining a permit, there is no foundational statutory provision that Appellant could rely upon to obtain injunctive relief under West Virginia Code § 22–21–17.

■ Appellant maintains that the absence of any provisions authorizing the Division to address the improper removal and/or conversion of minerals lends further support to its argument that the Act fails to provide a remedy for the issues it has raised. Similarly lacking from the Act, as Appellant observes, are provisions designed to permit an accounting so that aggrieved parties can quantify the resources that have been sold from particular wells. As we recognized in syllabus point two of *Daurelle v. Traders Fed. Savings & Loan Assn.*, 143 W.Va. 674, 104 S.E.2d 320 (1958), "[t]he rule which requires the exhaustion of administrative remedies is inapplicable where no administrative remedy is provided by law." Following a careful review of the Act's provisions in conjunction with the allegations raised in Appellant's declaratory judgment action, we are compelled to conclude that the Act does not contain remedies aimed at addressing the issues CBC raised below. As a result, we find no basis for the trial court's conclusion that Appellant failed to exhaust its administrative remedies.

Finally, Appellees argue that the administrative scheme established by the Act would be disrupted in "the absence of the Division reviewing its own conclusions previously reached about the lands in question." Given the Legislature's careful limitation on the authority extended to the Division under the Act, we fail to see how the regulatory framework will be disturbed if the Division is denied the opportunity to review its decision to issue coalbed methane permits to Dynatec. The Legislature was clear in its designation of the Division's regulatory responsibilities. Noticeably absent from those delineated powers is authority to interpret mineral rights and leasehold ownership issues. Because there are no provisions in the Act that contemplate relief for the issues set forth in Appellant's complaint, there is simply no procedural basis for referring this matter back to the Division.

Based on the foregoing, the decision of the Circuit Court of Wetzel County is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

Senior Status Justice McHUGH sitting by temporary assignment.